Dorothy COCKERHAM et al., Petitioners,

v.

E. A. COCKERHAM, Respondent.

No. B–4935.

Supreme Court of Texas.

July 9, 1975.

Rehearing Denied Oct. 8, 1975.

John Whiteside, Garrett, Settle & Callaway, Rufus S. Garrett, Jr., Fort Worth, for petitioner.

Lynn B. Griffith, Waxahachie, for respondent.

SAM D. JOHNSON, Justice.

This is a divorce case in which the wife's trustee in bankruptcy has intervened. The trial court granted the divorce and made the property division to be discussed hereinafter. The court of civil appeals affirmed with one justice dissenting. 514 S.W.2d 150. We affirm the judgment of the court of civil appeals in part and reverse and render in part.

Petitioner Dorothy Cockerham brought this suit for divorce against her husband, respondent E. A. Cockerham. E. A. Cockerham filed a cross action for divorce alleging his wife had drained the community assets for the benefit of an individual named De-Ray Houston. Petitioner Theodore Mack, trustee in bankruptcy of Dorothy Cockerham, intervened seeking to require the payment of indebtedness due the bankruptcy creditors out of the community property prior to its division between husband and wife. At trial the husband sought to prove, among other things, that the wife had made substantial gifts of community property to DeRay Houston in fraud of the husband's rights in the community. The jury rejected this argument in its answer to special issue number three:

"SPECIAL ISSUE NO. 3

"Do you find from a preponderance of the evidence that Dorothy Cockerham has made gifts of property to DeRay Houston?

"Answer 'Yes' or 'No'.

"ANSWER: No."

Pursuant to the jury verdict, the trial court on September 11, 1972 entered a judgment granting the parties a divorce, awarding custody of the children to the husband, giving the wife visitation and restraining the wife from taking the children away

from the husband's home. The judgment further recites, "The Court further finds that due to the intervention of the Trustee in Bankruptcy, the property rights of the parties herein are not determined at this time, but this Court retains jurisdiction of the property rights of such parties until finally determined at a future date."

About a year later, in September 1973, the cause was again called for trial for the purpose of determining the property rights of the parties. The property at issue in that trial, which is relevant to this appeal, included (1) a 198-acre tract claimed to be the homestead of the husband and wife, (2) a 320-acre tract on which the husband operated a dairy, and (3) a dairy business consisting of cattle, farm equipment and machinery, a milk base and milking equipment. Several claims were asserted against these properties. First, community debts totaling $47,985, which includes the sum of $36,200 due on indebtedness secured by a lien on the 198-acre tract, were alleged. Second,

the trustee in bankruptcy asserted a claim for $68,933.99 to pay the wife's bankruptcy creditors and the bankruptcy expenses. These debts arose out of the operation of a dress shop by the wife during the last two years of the marriage. Finally, the husband alleged the wife had made fraudulent gifts of community assets in the amount of $19,317.14 to DeRay Houston.

Trial on the property rights of the parties was to the court which made findings of fact and conclusions of law.[1]

The judgment of the trial court set aside the 198-acre homestead tract, along with household goods and furnishings, to the husband. The 320-acre tract was adjudicated to be one-half the separate property of the husband and one-half community property. The court required the $47,985 "community debts," which included the $36,200 due on the debt secured by a lien on the 198-acre tract, to be paid out of the community interest in the 320-acre tract of land and the other community property, consist-

1. The findings of fact are substantially as follows:

(1) The court held the 198-acre tract was the homestead of the parties and had an existing debt of $36,200 against it. The parties in addition owed $11,785 of other community debts for a total community indebtedness of $47,985.

(2) As to the 320-acre tract, the findings recite ". . . that one-half thereof is community property and one-half the separate property of the said E. A. Cockerham by reason of his ownership to an undivided one-half interest thereof prior to his marriage with Dorothy Cockerham" and that the partition suit "was but a means of convenience provided by law to complete the purchase of the whole and secure a loan thereon."

(3) The court made a finding which is contrary to the jury's answer to special issue number three, as above quoted. The court's finding was that Dorothy Cockerham made gifts of community assets to DeRay Houston in at least the sum of $19,317.14 in fraud of the community. The court further found that "this sum should be charged to the proportionate share owned by the said Dorothy Cockerham but subject to the community debts above set out."

(4) The court found the dairy business, along with one-half of the 320 acres of land, to be community property and held the par-

ties would take same subject to the community debt.

(5) As to priority, the court found "that the property rights of the said Dorothy Cockerham set out herein are subject first to the judgment of this Court, and then subject to the rights of the Intervenor Trustee in Bankruptcy."

Included in the conclusions of law were the following:

(1) "The act of Dorothy Cockerham, over the protest of E. A. Cockerham, in using community funds in her store adventure; and having a joint bank account with a third party male; and in transferring inventory from her store to the supposed store of the third party male without accounting for same, was a fraud upon the rights of E. A. Cockerham, and for which she is entitled to have charged against her interest."

(2) The estate is subject to the community debts ($47,985) and that Dorothy's share of the community property is chargeable with gifts made in fraud of the community.

(3) One-half of the 320 acres is the separate property of E. A. Cockerham and one-half is the community property of E. A. Cockerham and Dorothy Cockerham.

(4) As to a final conclusion, the court stated, "The share or portion of Dorothy Cockerham is subject to the divisions of this Court, and the rights of the Intervenor Trustee in the order as set out."

ing of the dairy business. After the community debts were paid the community property was to be divided equally between the parties. However, the husband was also awarded $9,658.57 (one-half of the $19,317.14 of community property which the trial court found to be fraudulently given by the wife to DeRay Houston) out of the wife's share of what remained of that equally divided property after payment of the community debts. The $68,933.99 due the trustee was to be satisfied out of the wife's share after the payment of all community debts and after further reducing her interest by the above-mentioned amount of $9,658.57.

Both Dorothy Cockerham and the trustee appealed from the judgment adjudicating the property rights to the court of civil appeals. That court affirmed the trial court's judgment, making, among others, the following determinations:

1. An undivided one-half of the 320-acre tract was E. A. Cockerham's separate property by reason of his prior ownership before marriage; the other undivided one-half of the 320-acre tract was the community property of E. A. and Dorothy Cockerham. Thus, there was a tenancy in common with respect to the 320-acre tract between the separate estate of E. A. Cockerham and the community estate.

2. The dairy business operated by the husband on the 320-acre tract was under the sole management and control of the husband, E. A. Cockerham, " . . . and therefore under Section 5.61,[2] community property consisting of an undivided one-half of the 320 acres, the milking equipment, cattle, milk base, and farm equipment, was not subject to the 'nontortious liabilities' of the wife, Dorothy Cockerham, same being the claims of the bankruptcy creditors of Dorothy Cockerham . . . ."

3. The trial court had the power to disregard the jury's finding that the wife did not make gifts to DeRay Houston because the jury findings regarding the division of property were advisory only. There was evidence to support the trial court's finding that the property was fraudulently conveyed by the wife; the trial court acted within its discretion in charging the wife's share with the amounts given.

4. The trial court acted within its discretion in requiring the indebtedness secured by a lien on the 198-acre homestead tract to be paid out of the community property prior to the wife's bankruptcy creditors.

5. The division of community property was not so disproportionately favorable to the husband as to be an abuse of discretion.

Both Dorothy Cockerham and the trustee have filed applications for writ of error. Their contentions will be discussed separately.

## APPLICATION OF THE TRUSTEE

The trustee brings fifteen points of error to this court. Basically he asserts error on the part of the court of civil appeals in not subjecting the whole 320-acre tract and all of the community property to the claims of the bankruptcy creditors, and in relegating those creditors to an inferior position with regard to priority. His initial contention is that the entire 320-acre tract was community property. Alternatively he argues that even if an undivided one-half interest in the 320-acre tract is the husband's separate property, the husband made a gift of one-half of his separate property interest to his wife. The trustee further argues that even if some part of the property is the separate property of the husband, it is nevertheless liable for the debts incurred in the operation of the dress shop.

*The 320-Acre Tract as Community or Separate Property.*

When the Cockerhams were married on May 16, 1949, the husband, E. A. Cocker-

2. Texas Family Code.

ham, owned an undivided one-half interest in the 320-acre tract and his brother, Herman Cockerham, owned the other undivided one-half. The brothers conducted a farming and cattle raising operation on this property. A number of years later, in 1955, Herman Cockerham wanted to sell his undivided one-half interest in the 320 acres and his brother, E. A. Cockerham, wanted to buy him out. However, E. A. Cockerham had to get a loan on the property in order to pay his brother for his half. In order to accomplish these things, the two brothers went to a lawyer who filed a partition suit on behalf of E. A. and wife against Herman and wife and secured the court appointment of receiver. The receiver thereupon sold the 320-acre tract to E. A. and Dorothy Cockerham at private sale under the orders of the district court. The receiver's deed indicates a total consideration of $22,700, of which $11,400 cash was recited to have been paid by E. A. and Dorothy Cockerham and $11,300 cash furnished by John Hancock Mutual Life Insurance Company, who reserved a vendor's lien on the land. It was undisputed, however, that E. A. and Dorothy Cockerham actually made no cash payment at all. It is also undisputed that the amount recited to have been paid in cash by E. A. Cockerham in this transaction ($11,-400) was approximately the value of his undivided one-half interest in the property. The receiver's deed was a conveyance to E. A. and Dorothy Cockerham, in both names as grantees. All Dorothy seemed to know about this transaction was that her husband was buying his brother out of the 320-acre tract. The trial court held that these facts were sufficient to establish that an undivided one-half of the 320-acre tract was separate property of E. A. Cockerham "by reason of his ownership to an undivided one-half interest thereof prior to his marriage." The court of civil appeals affirmed, holding that there was a tenancy in common between the separate property of E. A. Cock-

erham and the community property. The trustee attacks this holding, asserting that the evidence is insufficient to support the conclusion of the court of civil appeals that E. A. Cockerham adequately traced his prior separate property ownership in the 320-acre tract.

■ Property possessed by either spouse during or on dissolution of marriage is presumed to be community property. Section 5.02.[3] In order to overcome this presumption, the party asserting separate ownership must clearly trace the original separate property into the particular assets on hand during the marriage. *E.g., McKinley v. McKinley*, 496 S.W.2d 540, 543 (Tex.1973); *Tarver v. Tarver*, 394 S.W.2d 780 (Tex. 1965). *See* Comment, *The Commingling of Separate and Community Funds: The Requirement of Tracing in Texas*, 6 St. Mary's L.J. 234 (1974).

■ In the instant case it was undisputed that the husband owned an undivided one-half interest in identifiable real property prior to marriage. The partition suit and sale was, as found by the trial court, only "a means of convenience provided by law to complete the purchase of the whole and secure a loan thereon." In addition, the cash consideration ($11,400) recited to have been paid by E. A. Cockerham in this transaction was the approximate value of his prior undivided interest in the property. No cash, however, actually changed hands. These facts are sufficient to justify the trial court in finding that E. A. Cockerham put up the interest he owned prior to marriage as partial consideration for the purchase. Since the interest he owned prior to marriage was an undivided one-half of the 320-acre tract, such undivided one-half interest remained his separate property.

■ The trustee alternatively contends that if the husband had a separate property interest in the 320 acres the record shows

---

3. All references herein are to the Texas Family Code, hereinafter cited by section only.

he made a gift of an undivided one-half of such separate property interest to his wife. In support of this position the trustee points out that title to the whole 320 acres was taken in the name of E. A. Cockerham and wife, Dorothy Cockerham, and asserts that it is well established that when a husband uses separate property consideration to pay for land acquired during the marriage and takes title to the land in the name of husband and wife, it is presumed he intended the interest placed in his wife to be a gift. *Smith v. Strahan*, 16 Tex. 314 (1856); *Tucker v. Carr*, 39 Tex. 98 (1873); *Tate v. Tate*, 299 S.W. 310 (Tex.Civ.App.—Eastland 1927, no writ); *Carriere v. Bodungen*, 500 S.W.2d 692 (Tex.Civ.App.—Corpus Christi 1973, no writ); *Hampshire v. Hampshire*, 485 S.W.2d 314 (Tex.Civ.App.—Fort Worth 1972, no writ); 1 McCormick & Ray, Texas Law of Evidence § 92 (2d ed. 1956). *See* Pomeroy's Equity Jurisprudence § 1039 at 2354. This presumption, however, can be rebutted by evidence clearly establishing there was no intention to make a gift. *Smith v. Strahan, supra; Dean v. Dean*, 214 S.W. 505 (Tex. Civ.App.—1919, no writ); *Hampshire v. Hampshire, supra; Patterson v. Metzing*, 424 S.W.2d 255 (Tex.Civ.App.—Corpus Christi 1967, no writ); 1 McCormick & Ray, *supra.*

■ In the instant case Dorothy Cockerham testified she never paid any attention to the purchase of the 320 acres; in fact, she claimed she never even saw the deed to the property until the preparation for the instant litigation. Her attitude toward the 320-acre tract has, until the instant suit, been largely one of complete disinterest— the 320 acres and the dairy business on it were her husband's business about which she paid little, if any, attention. She offered no testimony in support of the presumption that her husband meant to make a gift to her of part of his interest in the 320-acre tract. There is nothing in her testimony which would indicate any understanding that a gift had been made to her. The husband's testimony also tends to negate any idea that he intended a gift to his wife. The structure of the transaction whereby he bought his brother's interest in the 320-acre tract was of no concern to him; he left the transaction entirely to his lawyer. All he knew was that one day he went to the courthouse and then, "I just owned 160 acres worth of land." At trial he took the position that the whole 320 acres had always been *his land.* Moreover, the husband's brother, Herman, from whom he bought the property corroborated the testimony that the purchase was structured as it was solely to enable the husband to buy the property. Based upon this evidence the trial court entered two findings of fact which relate to whether the husband intended a gift to the wife. First, the court found the method used to purchase the 320 acres was but a "means of convenience" to complete the purchase. Second, the court entered a finding that "one-half [of the 320-acre tract] is community property and one-half the separate property of E. A. Cockerham." By entering these findings the court impliedly found that the presumption the husband intended a gift to the wife was sufficiently rebutted and that, in fact, there was no such intention. This finding must be upheld if it finds any support in the evidence. *Langlotz v. Citizens Fidelity Insurance Company*, 505 S.W.2d 249 (Tex. 1974); *Butler v. Hanson*, 455 S.W.2d 942 (Tex.1970). Considering the record before us, we are unable to say there is no evidence to uphold the implied finding of the trial court that E. A. Cockerham did not intend to make a gift to his wife.

■ Since E. A. Cockerham adequately traced his prior separate interest in an undivided one-half of the 320-acre tract and sufficiently rebutted the presumption which arises from the fact that title was taken in the name of himself and his wife, a tenancy in common exists in the 320-acre tract between the undivided one-half separate property interest of E. A. Cockerham and the undivided one-half community property interest. *Gleich v. Bongio*, 128 Tex. 606, 99 S.W.2d 881 (1937).

## The Trustee's Claim Against the Community Property.

As noted above, the community owned an undivided one-half interest in the 320-acre tract as tenant in common. In addition, the dairy business, which was purchased during marriage with community funds, is indisputably community property.

The trustee claims the community interest in the 320-acre tract and the community property dairy business is subject to the dress shop obligations, relying on Section 5.61, which is entitled "Rules of Marital Property Liability" and which provides:

"(a) A spouse's separate property is not subject to liabilities of the other spouse unless both spouses are liable by other rules of law.

"(b) Unless both spouses are liable by other rules of law, the community property subject to a spouse's sole management, control, and disposition is not subject to:

"(1) any liabilities that the other spouse incurred before marriage; or

"(2) any nontortious liabilities that the other spouse incurs during marriage.

"(c) The community property subject to a spouse's sole or joint management, control, and disposition is subject to the liabilities incurred by him or her before or during marriage.

"(d) All the community property is subject to tortious liability of either spouse incurred during marriage."

The trustee argues, first, that the community property was subject to *joint* management, control and disposition and is thus liable for the debts incurred by Dorothy Cockerham in the operation of the dress shop under Section 5.61(c). Alternatively, the trustee contends that even if the dairy business was under the *sole* management of the husband within Section 5.61(b) the debts incurred in the operation of the dress shop are joint liabilities of the husband and wife and thus the dairy business is not insulated from liability by Section 5.61(b)(2), which protects sole management property only from nontortious liabilities incurred by the other spouse. Thus the trustee argues the dairy business would be subject to these joint liabilities under Section 5.61(c), which provides that property subject to the sole management of a spouse is subject to liabilities incurred by that spouse.[4]

## The Community Property as Joint or Sole Management Property.

Resolution of the issue of whether community property is joint or sole management property depends upon the construction and interpretation of Section 5.22, which pertains to the management of community property. At the time this case was tried that section read as follows:

"(a) During marriage, each spouse has the sole management, control, and disposition of the community property that he or she would have owned if single, including but not limited to:

"(1) personal earnings;

"(2) revenue from separate property;

"(3) recoveries for personal injuries; and

"(4) the increase and mutations of, and the revenue from, all property subject to his or her sole management, control, and disposition.

"(b) If community property subject to the sole management, control, and disposition of one spouse is mixed or combined with community property subject to the sole management, control, and disposition of the other spouse, then the mixed or combined community property is subject to the joint management, control, and disposition of the spouses, unless the spouses provide otherwise by power of attorney or other agreement in writing.

"(c) Except as provided in Subsection (a) of this section, the community property is

4. The reference to liabilities "incurred by him or her" in Section 5.61(c) is interpreted to mean liabilities incurred by the spouse referred to in that section.

subject to the joint management, control, and disposition of the husband and wife, unless the spouses provide otherwise by power of attorney or other agreement in writing." [5]

The court of civil appeals pointed out that the dairy business on the 320-acre tract was operated solely by E. A. Cockerham; that it was near but not contiguous to the homestead tract; that it was in possession and control of the husband; that the wife took no part in its operation. Thus, reasoned the court of civil appeals, the community property dairy business along with the undivided one-half community property interest in the 320 acres upon which the business was located was under the sole management of E. A. Cockerham within the meaning of Section 5.22(a). The trustee disputes this holding, contending the dairy business does not fit into any of the specifically enumerated classifications of sole management property listed in Section 5.22(a). Since Section 5.22(c) provides that all property except property included in Subsection (a) is joint management property, the trustee reasons the dairy business and the community tract are thus subject to the joint management of the husband and wife.

■ With regard to the 320-acre tract, the record reveals E. A. Cockerham and his wife in effect borrowed the cash necessary to purchase the community interest by giving a note secured by a deed of trust on the property in return. Title to the property was taken in the name of both husband and wife; both husband and wife were obligated on the note. Under virtually identical circumstances these facts were considered sufficient to establish that the community interest was subject to the joint management of the husband and wife in *Cooper v. Texas Gulf Industries, Inc.*, 513 S.W.2d 200 (Tex.1974). We therefore hold that the community interest in the undivided one-half of the 320-acre tract was subject to the

joint management of E. A. Cockerham and his wife. Section 5.22(c).

■ The situation with respect to the dairy business is somewhat more complicated. As has been noted, the dairy is located on the 320-acre tract, which is one-half separate property of the husband and one-half community property. The dairy was acquired during the marriage when the husband converted his cattle operation into a dairy business. Over the years the proceeds from the business were invested in additional machinery and equipment causing the business to increase in size and worth. It is asserted the proceeds from the dairy business are "personal earnings" of the husband within Section 5.22(a)(1); that these earnings alone have caused the dairy business to grow and thus the business is the "increase and mutation" of the husband's personal earnings and is under the sole management of the husband. Section 5.22(a)(4). We do not agree. The income from the dairy business was produced not only by the labor of the husband but also by the use of capital improvements which were community property and by the use of the land on which the business was located. Personal earnings, on the other hand, are earnings solely by physical or mental labor, unaided by capital, except insofar as may be necessary to supply the means of such labor as, for example, the ax of a woodcutter or the pen and paper of a writer. *First Nat. Bank v. Davis*, 5 S.W.2d 753 (Tex.Com.App.1928, holding approved); 1 Speer's Marital Rights in Texas § 421 at 625 (4th ed. 1961). We conclude the income produced by the dairy business was not "personal earnings" of the husband within Section 5.22(a)(1). The husband has not shown that this is property which he "would have owned if single." Section 5.22(a). The use of community assets was an integral part of the dairy business. We therefore hold the dairy business was thus under the joint management, control and disposition of the husband and wife under Section 5.22(c).

---

**5.** Effective January 1, 1974 Subsection (c) was changed to allow spouses to eliminate

the requirement that an agreement to alter managerial powers be in writing.

Since both the community interest in the 320-acre tract and the community dairy business were under the joint management of both E. A. Cockerham and his wife, they will be liable for the dress shop debts whether those debts are considered obligations of only the husband, of only the wife or joint obligations of both the husband and wife. Section 5.61(c).

*The Trustee's Claim Against the Husband's Separate Property.*

The trustee also seeks to hold the husband's separate property interest in an undivided one-half of the 320-acre tract liable for the dress shop debts. He argues that Section 5.61(a) does not insulate the husband's separate property from liability for the dress shop debts. He contends, first, that the dress shop debts are joint liabilities for which both spouses are liable. Alternatively, he claims that even if the dress shop debts are liabilities of the "other spouse" (wife) within Section 5.61, the husband is nevertheless also liable under "other rules of law" within the meaning of that statute. We sustain the trustee's first contention and thus find it unnecessary to consider his alternative argument.

*The Character of the Dress Shop Debts.*

In 1969 Dorothy Cockerham opened a dress shop in Hurst, Texas. The evidence is conflicting as to E. A. Cockerham's attitude toward this enterprise—she claimed he urged her to open the shop; he claimed he opposed the move but realized that not allowing her to open the shop would cause a divorce. Notwithstanding his alleged opposition, however, the wife did, in fact, open the shop using approximately $4,000 which was advanced to her by the husband.

Dorothy had financial difficulties from the beginning and in 1970 she moved the shop to Burleson, Texas in an attempt to improve sales. The business continued to flounder, however, and eventually resulted in bankruptcy. The debts asserted by the trustee represent, primarily, credit purchases of inventory for the store.

E. A. Cockerham never took part in the conduct or operation of the dress shop and all purchases for the shop were made by Dorothy. The husband claims this fact alone establishes that the debts incurred were solely those of his wife. The fact of physical operation of a business, however, is not wholly determinative of the character, as sole or joint, of the debts incurred in its operation. This is especially true since both husband and wife now have full capacity to contract. Section 4.03.

To determine whether a debt is only that of the contracting party or if it is instead that of both the husband and wife, it is necessary to examine the totality of the circumstances in which the debt arose. Of particular importance in the instant case is the consideration of implied assent to the debt by the noncontracting party, the husband.

The debts in the instant case arose, of course, during marriage. It is well established that debts contracted during marriage are presumed to be on the credit of the community and thus are joint community obligations, unless it is shown the creditor agreed to look solely to the separate estate of the contracting spouse for satisfaction. *Broussard v. Tian,* 156 Tex. 371, 295 S.W.2d 405 (1956); *Gleich v. Bongio, supra.* There is no evidence the parties who extended Dorothy Cockerham credit agreed to look solely to her separate estate for satisfaction, and thus, there are no facts to rebut the presumption these debts are community liabilities. Though this would establish the community character of the debts, the fact that the debts are community liabilities would not, without more, necessarily lead to the conclusion they were joint liabilities. Characterization of the debts as community liabilities is only one aspect of the circumstances to be considered in determining whether the debts are joint.

In the instant case the record is replete with factors which point to the conclusion that the dress shop debts were joint liabilities of both the husband and the wife.

For example, it was the husband who advanced the wife the necessary capital to pay for the initial inventory of the store. In addition, it was the wife's practice, acquiesced in by her husband, to write checks for personal and family expenses on his personal checking account by signing his name rather than hers; this was done because the parties did not have a joint account. Their bank knew of this practice and honored the checks written by the wife on her husband's account. After the wife opened the dress shop she continued to write checks on her husband's account and often paid for merchandise for the store in this manner. The husband never forbade her to do so nor did he stop payment on any of the checks. On one occasion, as the business began to encounter difficulties, he borrowed $5,000 to pay off some of the dress shop debts because, in his words, ". . . I have always paid my debts." It is clear that he recognized these as his obligations. Though the husband now claims he did not authorize the dress shop liabilities, his actions were consistent with an implied assent to their establishment. In addition, there is some evidence of an expressed assent in that there was at least one instance in which he himself signed a check in the sum of $1,400 which was used to pay operational expenses of the dress shop. Moreover, the joint income tax returns of Dorothy and her husband for the years Dorothy had the dress shop reveal they took depreciation deductions on the dress shop equipment and wrote off substantial losses because of the dress shop operation. Because of this the Cockerhams paid very little, and in some years no, federal income tax even though the husband had a substantial income from his dairy business.

In view of the record presented to this court, we hold the dress shop debts are joint liabilities of both the husband and the wife. Since they are not liabilities of the "other spouse," Section 5.61(a) does not insulate the husband's separate property from liability for these debts. A joint liability is an obligation of both parties; the husband's separate property is therefore subject to the dress shop debts. *See, e.g.,* 4 Corbin on Contracts § 928 (1951).

*The Trustee's Claim for Equality in Priority.*

 The order of the trial court, which was affirmed by the court of civil appeals, provided that the community debts would be paid out of the community estate and that the balance of the community property would be divided equally between the husband and wife, except for the payment to the husband, out of the wife's share, of $9,658.57, representing his share of community property allegedly disposed of in fraud of his rights. The wife's bankruptcy debts were to be satisfied out of the wife's share of the community property after payment of the $9,658.57 to the husband. The trustee argues first that the courts below erred in allowing the community creditors to be satisfied out of the community property before the bankruptcy creditors. The trustee claims all of the unsecured creditors, including the bankruptcy creditors, had an equal right to be paid out of the community property. We have determined that the debts asserted by the bankruptcy creditors are joint liabilities of the husband and the wife; they therefore have an equal right to be paid out of the community property and also may be satisfied out of the separate property of the husband.

The second argument of the trustee is that the courts below erred in subordinating the rights of the bankruptcy creditors to the claim of the husband against the wife. Any distribution of community property between the husband and wife, contends the trustee, must be done in subordination to the rights of creditors. *See* 3 Speer's Marital Rights in Texas § 840 (4th ed. 1961). We agree that the courts below erred in allowing the claim of the husband to be paid before the claim of the trustee. We reach this conclusion, however, upon a determination that the award to the husband was improper.

As noted above, the trial court found that Dorothy Cockerham had fraudulently taken community property and made gifts to DeRay Houston. This finding was in disregard of the jury's refusal to find that Dorothy had made such fraudulent gifts. As recognized by the court of civil appeals, the testimony was sharply conflicting on this issue and there was certainly at least some evidence to support the jury's answer. The court of civil appeals, however, held that the trial court had the power to disregard the jury's answer because answers of the jury regarding disposition of property are advisory only. Though the trial court has wide discretion in dividing the property of the spouses as it feels just and in disregarding advisory answers of the jury, it may not ignore the jury's answers which extend to issues of fact from which the status of property is determined. *Stafford v. Stafford*, 41 Tex. 111 (1874); *Rice v. Rice*, 21 Tex. 58 (1858); *Baker v. Baker*, 104 S.W.2d 531 (Tex.Civ.App.—San Antonio 1936, no writ). This is particularly true when the disposition of the property to the husband or wife is based solely on its status. In the instant case the award of part of the wife's share of community property to husband was based only on the findings of the trial court that the property was property which had been fraudulently disposed of by the wife. This was directly related to the status of the property. The action of the trial court in disregarding the jury's answer regarding the status of the property was error. There was no basis for the award to the husband.

## APPLICATION OF THE WIFE

Dorothy Cockerham contends the trial court's division of the property was so disproportionate as to be manifestly unjust and amounted to an abuse of discretion. Her main complaint is that the trial court awarded the 198-acre homestead tract and all the household furniture to her husband. Other than this, all of the community property was divided equally, subject to the community debts.

It is well established that the trial court has wide discretion in the division of property on divorce and it will be disturbed only when an abuse of discretion is shown. Section 3.63; *Hailey v. Hailey*, 160 Tex. 372, 331 S.W.2d 299 (1960); *Hedtke v. Hedtke*, 112 Tex. 404, 248 S.W. 21 (1923). Considering the record before us, we are unable to say the trial court abused its discretion.

We hold that the husband did not make a gift of an undivided one-half interest in his separate property interest in the 320-acre tract to the wife; that the 320-acre tract is one-half the separate property of the husband and one-half the community property of the husband and the wife; that a tenancy in common exists on the 320-acre tract between the undivided one-half community property interest and the undivided one-half separate property interest of the husband; that the undivided one-half community property interest in the 320-acre tract was under the joint management of the husband and the wife and is subject to the dress shop debts; that the dairy business was community property under the joint management of the husband and the wife and is liable for the dress shop debts; that the dress shop debts are joint obligations rendering the husband's separate property interest in the 320 acres liable for these obligations; that the bankruptcy creditors and the community creditors have an equal right to be satisfied out of the community property; that the trial court erred in disregarding the jury's answer regarding the status of the property allegedly given by the wife to DeRay Houston and the courts below erred in ordering a reduction in the wife's share of the community property in the sum of $9,658.57; and that the trial court's division of the property was not so disproportionate as to amount to an abuse of discretion.

The judgment of the court of civil appeals is accordingly affirmed in part and reversed and rendered in part in accordance

with this opinion. The case is further remanded to the trial court for determination, pursuant to Section 5.62, of the order in which the property of the parties shall be subject to execution.

Dissenting opinion by REAVLEY, J., in which GREENHILL, C. J. and WALKER, J., joined.

REAVLEY, Justice (dissenting).

I disagree with the Court's holding that E. A. Cockerham is personally liable for, and his separate property subject to, the debts incurred by Dorothy Cockerham in the operation of the dress shops.[1] It is a long step through fact and law from the decision of the trial court that E. A. Cockerham is not liable personally for those debts, incurred by Dorothy "in her store adventure" which used community funds "over the protest of E. A. Cockerham," to the decision by this Court that he is personally liable.

What are the factors so "replete" in this record which the majority find to require that we take this step? We are given the following: (1) The husband "advanced" the wife money. He paid for the initial inventory and borrowed money at one time to enable her to meet her difficulties. (2) She was allowed to write checks on "his personal checking account." He signed one of the checks himself to pay an operational expense. (3) The husband and wife filed joint income tax returns and deducted for the dress shop losses. Since "his dairy business" was enjoying a substantial income, the deductions reduced the amount of tax that would otherwise have been due. (4) The husband gave his implied assent to the dress shop liabilities.

It must first be understood that there is no pleading and no contention that any creditor relied upon appearances that the husband was operating or responsible for these dress shops. Estoppel is not in the case. The facts by anyone's version would not take us in that direction. E. A. Cockerham worked at his dairy farm near Itasca and did little else. During the two years while Dorothy Cockerham had a dress shop, first in Hurst and then in Burleson, he went there "once or maybe twice." He did absolutely nothing toward the operation of these dress shops, and he took no interest in them except for his concern about the cost when he became aware of the difficulties several months before the collapse.

Money for this venture did indeed come out of the Itasca bank account. Quite a bit of it. But these were community funds and a community bank account. Except for the interests in land stated above, all that they owned was community property. The Court holds here that this community was under the joint management and control of both spouses. During the 22 years of their marriage they had kept their money in this account and the wife had always signed checks on the account by writing his name—sometimes adding "by wife." The references in the opinion to what he "advanced the wife" are inappropriate to the present Family Code and to the emancipation of married women.

The Cockerhams filed joint income tax returns through 1971. All income and all deductions were reported without any distinction between the separate or community nature of each. This is what spouses do in joint returns, and I know of no prior suggestion that the ownership of property or personal liabilities are thereby changed.

I had supposed that the Texas Family Code as enacted and amended by the 61st, 62nd and 63rd Legislatures places a creditor who deals with one spouse in a position where, in the event of subsequent unpaid debts and liabilities, he might not be able to reach that community property which is not held solely in the name of the spouse with whom he deals. Section 5.24 protects the

---

1. E. A. Cockerham's separate property, prior to divorce, consisted of the one half interest in the 320 acres discussed in the opinion, and also his remainder interest in 130 acres which is not discussed. The latter interest was given to him by his mother, who retained a life estate.

creditor to the extent that he can assume the spouse has sole management of property in that spouse's name. However, the other community property may well be under the sole management of the other spouse by the terms of § 5.22, which so specifies for property that the other spouse "would have owned if single" and which also gives effect to agreements between the spouses, whether or not the agreement is known to the creditor. If the other spouse has sole management, under §'5.61 that property is beyond the creditor's reach. If that state of the law was disturbing to creditors, they can now relax while spouses with separate estates do the worrying. The Court today seems to hold that a wife (or husband) who assents to the husband (or wife) spending community funds in a venture thereby subjects her (or his) total estate to any liability that the husband's (or wife's) venture may precipitate.

Except for the liability for necessaries which each spouse may owe for the support of the other spouse, the separate property of a spouse should be subjected to liability for debts of the other spouse only to the extent and under the same rules of law that would make a non-family party liable. §§ 5.61(a), 3.59.

If the separate property of E. A. Cockerham is liable for the dress shop debts, discussion of sections of the Family Code and of the matters of joint or sole management are not necessary. The present case raises so many questions of interest that the majority does discuss a few unnecessary matters, and I shall discuss one.

In deciding the respective ownership of the 320 acres, the majority begins with the "well established" rule "that when a husband uses separate property consideration to pay for land acquired during the marriage and takes title to the land in the name of husband and wife, it is presumed he intended the interest placed in his wife to be a gift." The reason back of the rule is that a husband or parent owes a moral obligation to a wife or child, and a deed in the name of the wife or child is presumed to have been made in discharge of that moral obligation and as a gift to the natural object of his love and affection. If, however, the wife uses her separate money to purchase property and takes a deed in the name of the husband, the contrary presumption follows: he holds legal title under resulting trust for her benefit. *Smith v. Strahan,* 16 Tex. 314 (1856). Such differences in treatment are now passé. Comment, 9 Houston L.Rev. 120 (1971). For instruments executed after the date of the delivery of this opinion, I would apply the presumption in favor of a gift to either spouse. However, I would not presume a gift in favor of a spouse who is receiving an interest in the property irrespective of gift. In the present case, Dorothy and E. A. Cockerham were purchasing an undivided half interest for their community. This explains the appearance of Dorothy's name as grantee. No presumption of gift by him to her of his separate property interest is justified. I must add that under the writing of the majority, the presumption has become a very weak one. The husband testifies that the interest is his, and the wife, though in court, says nothing about a gift; presumption rebutted.

GREENHILL, C. J. and WALKER, J., join in this dissent.