Samuel P. MARYNICK and Sharon
Kay Marynick, Appellants,

v.

Brenda Lewellen
BOCKELMANN, Appellee.

No. 05-88-00552-CV.

Court of Appeals of Texas,
Dallas.

May 31, 1989.

Rehearing Denied July 11, 1989.

Andrew Barr, Dallas, for appellants.
Gordon Bogen, for appellee.

Before STEWART, ROWE and OVARD, JJ.

STEWART, Justice.

Samuel P. Marynick and Sharon Kay Marynick, landlords, sued Brenda Lewellen Bockelmann and her former husband Hermann O.W. Bockelmann, tenants, for past due rent, for repairs necessitated by the tenants' failure to maintain the premises, and for unpaid loan payments on a loan from Samuel Marynick to Hermann Bockelmann. The trial court entered judgment for the Marynicks against Hermann Bockelmann but ordered that the Marynicks take nothing against Brenda Bockelmann. The Marynicks appeal from the take-nothing judgment in favor of Brenda. In two points of error, the Marynicks contend that the trial court erred in entering the take-nothing judgment because Brenda, as a signatory on the lease, was liable for unpaid rent for the holdover terms when her husband remained in possession of the premises beyond the initial lease term. The Marynicks also argue that Brenda was liable under the loan agreement signed by her husband because, under the Texas Family Code, one spouse is obligated by a contract signed by the other spouse. We conclude that Brenda is not liable under the loan contract Hermann signed. However, we agree that Brenda is liable under the lease for unpaid rent accrued during the holdover terms of the lease and for stipulated damages for failing to maintain the premises. Accordingly, we reverse the trial court's take-nothing judgment, render judgment in the amount of the unpaid rent and stipulated damages, and remand for determination of the amount of attorney's fees.

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

We first note that the Marynicks did not request, and the trial court did not file, findings of fact and conclusions of law. Where there are no findings of fact in an appeal from a trial before the court, this court must affirm the judgment if it can be upheld on any legal theory that finds support in the evidence. *In the Interest of*

*W.E.R.*, 669 S.W.2d 716, 717 (Tex.1984). Thus, we must examine the evidence in the record and the law applicable to the case to determine if the law and the facts support the trial court's take-nothing judgment. In doing so, we will imply all necessary fact findings in support of the judgment. *Id.*

## II. FACTS

Brenda Bockelmann and her then husband Hermann Bockelmann rented one-half of a duplex from the Marynicks in 1978. In 1984, the parties entered into a new lease agreement for the same premises. In the lease, Sam and Sharon Marynick were designated "Lessor" and Hermann and Brenda Bockelmann were designated "Tenant". Both Hermann and Brenda signed the lease in the space designated for "Tenant". The lease provided for a twelve-month term beginning March 1, 1984, and ending February 28, 1985. The lease also included the following holdover provision:

> Should Tenant remain in possession of the demised premises with the consent of Lessor after the natural expiration of this lease, a new tenancy from year to year shall be created between Lessor and Tenant which shall be subject to all the terms and conditions hereof but shall be terminable by 60 days written notice.

Brenda separated from her husband and vacated the leased premises on February 18, 1985, ten days before the expiration of the initial term of the lease. Hermann remained in possession of the premises until September 7, 1986, during the second holdover term.

During the spring and summer of 1985, Hermann told the Marynicks that he was experiencing financial difficulties. Rent for the months of May, June, and July 1985 was not paid. On July 15, 1985, Hermann and Samuel entered into a contract suspending the payment of rent from May 1985 through November 1985. These rental payments were characterized as a loan of $5,950 from Samuel Marynick to Hermann Bockelmann, with interest at nine and one-half percent. Rental payments were to resume in December 1985, and

repayment of the loan was to begin January 1, 1986, and to continue through January 1, 1987. Hermann was to pay twelve installments of $550, and a final payment of $212.08. These loan payments were to be in addition to the monthly rental payments of $850. Only Hermann and Samuel signed this loan agreement.

The contract payments for January 1986 through June 1986 were paid, as were the monthly rental payments for November 1985[1] through June 1986. The loan and rental payments for July 1986 through January 1987, however, were not paid, nor was the February 1987 rent.

It is undisputed that Brenda did not give notice to the Marynicks that she had vacated the leased premises. Hermann testified that he called Sharon Marynick some time after Brenda moved out to tell her that his wife had left him. Samuel Marynick testified that he did not find out until late spring or early summer 1985 that Brenda had moved out. He testified that Hermann told him Brenda was no longer living there, but that Hermann said that there was going to be a reconciliation. Samuel Marynick stated that he saw Brenda at the rental unit "fairly often" between May 1985 and September 1986.

Brenda filed for divorce in January 1986, and the court entered the decree of divorce in April 1986. Samuel Marynick testified that he received no notice of the divorce. The first time he became aware that Brenda and Hermann would not reconcile was in December 1986. He had a conversation with Brenda's sister at a local store; although the word "divorce" was not used, he came away with the feeling that the separation was permanent.

### III. LIABILITY UNDER THE LEASE

 In their first and second points of error, the Marynicks argue that Brenda is liable under the lease because she entered into that agreement as a party, and as a party to the lease she was obligated to perform the lease terms so long as the lease remained in effect. We agree that,

generally, joint and several liability arises when two or more persons cosign a contract. *Trinity Universal Ins. Co. v. Drake*, 587 S.W.2d 458, 465 (Tex.Civ.App.—Dallas 1979), *aff'd in part, rev'd in part on other grounds*, 600 S.W.2d 768 (Tex. 1980). It is undisputed that Brenda signed the lease agreement.

Thus, the only legal issue to resolve is how long the lease remained in effect as to Brenda. Brenda would have us hold that the lease terminated as to her after the expiration of the initial term because she did not remain in possession beyond the initial term of the lease. The Marynicks argue that the lease continued as to both Hermann and Brenda until February 28, 1987, because Hermann remained in possession past the initial term and through a second holdover term when Hermann remained in possession after the first holdover term.

### A. HOLDING OVER

 Although this case involves a contractual holdover term, we look to cases concerning common law holding over in order to resolve the issue of whether the holdover of one tenant constitutes a holdover for all tenants obligated under the lease. It is well settled at common law that when a tenant holds over, a new lease for the same term is created. *See Turton v. Pyland*, 567 S.W.2d 247, 248 (Tex.Civ. App.—Dallas 1978, no writ); *Eckstine v. Webb Walker Jewelry Co.*, 178 S.W.2d 532, 536 (Tex.Civ.App.—Fort Worth 1944, writ ref'd). A second holdover year is created by holding over in a similar manner as under the first holdover year. *Jones v. Winter*, 215 S.W.2d 654, 656 (Tex.Civ.App. —Amarillo 1949, writ ref'd n.r.e.); *Hunger v. Toubin Bros., Inc.*, 164 S.W.2d 765, 766 (Tex.Civ.App.—Austin 1942, writ dism'd). The right of the landlord to hold a holdover tenant for another term is not affected by the length of time the tenant holds over but will arise if the tenant holds over a few days or for a single day, unless the circum-

---

**1.** Although the contract recited that rental payments were to resume in December 1985, the record reflects that Hermann made a rental payment in November 1985.

stances are such as to excuse the holding over. *Hunger*, 164 S.W.2d at 767.

There is little Texas authority concerning what acts constitute holding over so as to create a new lease. Certainly, when the sole tenant obligated under a lease remains in possession, a new lease is created. *See, e.g., Barragan v. Munoz*, 525 S.W.2d 559, 561 (Tex.Civ.App.—El Paso 1975, no writ). When both tenants under a lease remain in possession, that holdover creates a new lease as to both. *See, e.g., Turton*, 567 S.W.2d at 248. A holdover by an assignee of the original lease also creates a new lease. *Hunger*, 164 S.W.2d at 768. In *Hunger*, Toubin Brothers, a partnership, signed the lease as tenant. Thereafter, the partnership was converted into a corporation without a change of business and that business was carried on by the corporation in the same building. The court held that, as a matter of law, the corporation assumed the lease and, as assignee, created a new term by holding over. *Id.* at 767.

We have found only one authority that addresses the facts presented in the case at bar, where one of two tenants vacates and the other holds over. The only case in point that has come to our attention is *Fronty v. Wood*, 20 S.C.L. (2 Hill) 367 (1834). The court there held that where a lease is to two tenants jointly and only one occupies after the expiration of the initial lease term, the holding will be presumed to be by both, and both will be liable unless the tenant not in actual possession gives notice to the lessor that he ceases to hold. *Id.* at 368. Under Texas law, such notice would have to be given prior to the commencement of the holdover term. *Hunger*, 164 S.W.2d at 766.

We conclude that the correct rule for holding over when two tenants are jointly obligated under the lease is expressed in *Fronty v. Wood* for the following reasons. As long as one tenant remains in possession, it would appear to the landlord that the situation had not changed, that the premises were not vacant and available for lease. When the vacating tenant informs the landlord that he ceases to hold, the landlord can then choose whether to terminate the lease as to the remaining tenant, by refusing to consent to the holding over, or whether to continue the lease in reliance on the remaining tenant's ability to fulfill the obligations under the lease.

It is undisputed that Brenda did not notify the Marynicks that she ceased to hold before the termination of the initial lease term. The record reflects, however, that Sharon Marynick had actual notice of Brenda's departure soon after she left and that Samuel Marynick learned that Brenda had moved out in the late spring or early summer of 1985. Thus, the trial court could infer that at least by early summer 1985, both of the Marynicks had actual notice that Brenda was no longer a tenant in possession. Brenda argues that this actual notice and the Marynicks' subsequent course of conduct in looking only to Hermann for rent payments, in allowing Hermann to continue in possession without paying rent, in signing the loan agreement solely with Hermann and then allowing him to hold over a second year, should relieve her from liability under the lease.

We disagree. Vacating the premises is not the equivalent of notice that a tenant holding jointly has ceased to hold under the lease. As between Brenda and the lessors, Brenda had the right at any time during the holdover periods to use of the premises unless the Marynicks gave sixty days written notice terminating the lease, as the lease expressly required. The fact that Brenda did not want to share the premises with Hermann did not affect her rights, nor those of the Marynicks, under the lease. Further, we do not consider it unreasonable to require a tenant holding jointly to take some type of affirmative action to avoid his or her otherwise continuing contractual obligations.

Brenda also argues that her marital relationship with Hermann is the sole basis for the assertion of liability against her because liability for the lease is based exclusively on the affirmative act of her husband in holding over. We disagree. Brenda's liability is based upon her signing, and

thus becoming a party to, the 1984 lease. Our decision is not based on Brenda's marital relationship but upon her liability as a tenant holding jointly under the lease.

■ Thus, we hold that Brenda, by failing to notify the Marynicks that she ceased to hold under the lease, has not rebutted the presumption that a holding over by Hermann was also a holding over by Brenda. Knowledge of the landlord that one tenant is not occupying the premises at the time of the holding over by the other tenant does not suffice to overcome the presumption of a joint holding over. Accordingly, we further hold that Brenda was liable for the rent payable under the lease for both the first and second holdover periods. The trial court's take-nothing judgment is not supportable under the law and the record.

### B. RENTAL PAYMENTS

We conclude, however, that there were no unpaid rentals during the first holdover term. The contract entered by Hermann and Samuel was structured as a loan from Samuel to Hermann for payment of rentals for the months of May 1985 through November 1985. Thus, the rent for that period was paid by the loan proceeds. Hermann also paid the rent for December 1985 through February 1986. There were, therefore, no unpaid rentals during the first holdover term for which Brenda is liable. During the second holdover term, Hermann paid the rent through June 1986, but the rent for July 1986 through February 1987 was not paid. Thus, Brenda is liable for the eight months of unpaid rent.

### C. REPAIRS TO THE PREMISES

At trial, the parties stipulated that at the time the Marynicks and the Bockelmanns entered into the lease, the leased premises were in good condition and proper repair. They further stipulated that the cost incurred by the Marynicks in removing paint, in resurfacing and repainting the walls, ceiling and woodwork, and in removing the bookshelves and repairing the walls was the sum of $1,933.39 and that such amount

for materials and labor was reasonable and necessary.

■ Section 13 of the lease required the tenant, at his sole expense, to keep and maintain the leased premises in good and sanitary condition and repair during the term of the lease and any renewal thereof. We have held that Brenda's obligations under the lease were joint and continued through the second holdover term by virtue of Hermann's holding over. Thus, we conclude that Brenda is liable for the stipulated damages to the premises. The trial court's take-nothing judgment in this respect cannot be upheld.

### IV. LIABILITY UNDER THE CONTRACT

The Marynicks argue further within points one and two that Brenda is liable under the contract which delayed the payment of rent even though the contract was signed by her husband alone. The Marynicks contend that Brenda is obligated by this contract because case law establishes that a spouse is obligated under a contract signed by the other spouse and because the Texas Family Code provides for a spouse's liability for the other spouse's debts for necessaries such as shelter.

### A. WIFE'S LIABILITY FOR DEBT INCURRED BY HUSBAND

■ The Marynicks argue that debts contracted for during the marriage are presumed to be on the credit of the community and are thus community debts. They contend that Brenda is thus liable for the community debt incurred by Hermann. As one commentator notes, "Ordinarily a court terms a debt incurred by a spouse a community debt for the purpose of characterizing property bought on credit or with borrowed money. With that description, however, a court does not thereby impute liability to the noncontracting spouse." McKnight, *Annual Survey of Family Law: Husband and Wife*, 42 Sw.L.J. 1, 4 (1988) (footnotes omitted); *see also Latimer v. City Nat'l Bank*, 715 S.W.2d 825, 826–27 (Tex.App.—Eastland 1986, no writ). The fact that debts are community liabili-

ties does not, without more, necessarily lead to the conclusion that they are joint liabilities. *Cockerham v. Cockerham*, 527 S.W.2d 162, 171 (Tex.1975). Section 4.031(a) of the Texas Family Code reiterates the long-standing rule that "the marital relationship does not in itself make one spouse the agent of the other." *Wilkinson v. Stevison*, 514 S.W.2d 895, 898 (Tex.1974). Thus, Hermann's signature on the contract does not in itself create personal liability for Brenda in the absence of her signature.

█ As the *Cockerham* court noted, characterization of the debts as community liabilities is only one aspect of the circumstances to be considered in determining whether the debts are joint. *Cockerham*, 527 S.W.2d at 171. The *Cockerham* court also looked to whether the noncontracting spouse acquiesced in or impliedly assented to the establishment of the debts. *Id.* at 172. In *Miller v. City Nat'l Bank*, 594 S.W.2d 823 (Tex.Civ.App.—Waco 1980, no writ), the court noted that the debt contracted for by the husband alone was presumptively community because it was incurred during marriage. Nevertheless, the court held:

> There is no evidence that [wife] expressly or impliedly agreed to the execution of the notes by her husband, or that she agreed to pay the notes, or that she had any knowledge at all of the fact of the execution of the notes; and there is no evidence of the use made of the money loaned to the husband on the notes. In short, there is no evidence to support the conclusion that the notes were the liabilities of [wife] jointly with her husband who incurred the debts.

*Miller*, 594 S.W.2d at 826.

As in *Miller*, there is no evidence in the instant case that Brenda expressly or impliedly agreed to the execution of the contract by Hermann or to pay the loan or that Brenda had any knowledge at all of the existence of the contract. We reiterate that in the absence of findings of fact and conclusions of law, we must affirm the trial court's judgment on any legal theory that finds support in the evidence, and must

imply all necessary fact findings in support of the judgment. *W.E.R.*, 669 S.W.2d at 717. We hold that Brenda is not jointly liable for the debt incurred solely by Hermann.

## B. CONTRACT FOR NECESSARIES

The Texas Family Code provides that a spouse *who fails to discharge the duty of support* is liable to any person who provides necessaries to his spouse. TEX. FAM.CODE ANN. § 4.02 (Vernon 1986). The Marynicks contend that they provided necessaries—shelter—to Hermann and, thus, Brenda is liable. There is, however, nothing in the record to suggest that Brenda failed to discharge her duty to provide support for her spouse. We will imply the fact finding by the court that Brenda did not fail to discharge her support obligations.

## C. SUMMARY

The trial court's judgment that the Marynicks take nothing against Brenda under the contract is readily supportable under the record. Thus, this portion of the trial court's judgment must be upheld. To the extent they address Brenda's liability under the contract, points of error one and two are overruled.

## V. ALTERNATE THEORIES OF RECOVERY

In the absence of findings of fact and conclusions of law, we must affirm the trial court's judgment if it can be upheld on any legal theory that finds support in the evidence. *W.E.R.*, 669 S.W.2d at 717. Thus, we will explore those legal theories which Brenda suggests support the take-nothing judgment.

## A. RELEASE

█ Brenda suggests that the take-nothing judgment can be upheld on the legal theory of release. She argues that the contract modifying terms of rental payments, signed only by Hermann and Samuel, constituted a release of her liability. Release is an affirmative defense which

must be pleaded or is waived. TEX.R. CIV.P. 94. Brenda did not include the affirmative defense of release in her answer. Even in the absence of findings of fact, the judgment must be supported by the pleadings. *See Campbell & Son Constr. Co. v. Housing Auth. of Victoria*, 655 S.W.2d 271, 274 (Tex.App.—Corpus Christi 1983, no writ). Thus, the legal theory of release will not support the trial court's judgment.

### B. WAIVER

■ Brenda argues that the take-nothing judgment is supportable by the legal theory of waiver. In her answer, she alleged that the Marynicks waived any claim against her by entering into the contract with Hermann. Waiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987). Brenda alleged that entering into the contract with Hermann was inconsistent with the Marynicks' insistence upon payment of the rent by Brenda.

The contract was a loan between Hermann and Samuel. Samuel loaned Hermann money for rent. Thus, the rent covered by the loan, May 1985 through November 1985, was paid by the loan proceeds. The contract further provided that regular monthly lease payments would resume in December 1985. We conclude that this contract is not inconsistent with obligations under the lease. The contract is merely a separate loan, the proceeds of which paid the rent as required under the lease. Thus, the Marynicks relinquished no right given under the lease. We hold that there was no waiver by the Marynicks justifying a take-nothing judgment in Brenda's favor.

### C. NOVATION

■ Brenda also pleaded the affirmative defense of novation. Novation requires a previous valid obligation, agreement of all the parties to a new contract, extinguishment of the old contract or obligation, and validity of the new contract. *Talamas v. Bressi Intern.*, 727 S.W.2d 72,

74 (Tex.App.—San Antonio 1987, writ ref'd n.r.e.); *Koelzer v. Pizzirani*, 718 S.W.2d 420, 423 (Tex.App.—Fort Worth 1986, no writ). As the Texas Supreme Court has explained:

> In the absence of such inconsistent provisions of two contracts that both cannot stand, thereby working an implied novation, it is held that a second contract will operate as a novation of a first contract only when the parties to both contracts intend and agree that the obligations of the second shall be substituted for and operate as a discharge of the obligations of the first.... In keeping with this general rule it is held that *to effect a novation by the substitution of one debtor for another thereby releasing the first, there must be agreement to that effect between all three parties*, and a presumption of an intention to release the first debtor will not arise from the mere taking of the second.

*Chastain v. Cooper & Reed*, 152 Tex. 322, 257 S.W.2d 422, 424 (1953) (emphasis added).

■ Brenda argues that Samuel Marynick, in entering into the loan agreement with Hermann, agreed to look solely to Hermann for rent payments under the lease, thus substituting Hermann alone for obligations owed by Hermann and Brenda jointly. We disagree. As previously discussed, the contract between Hermann and Samuel is merely a separate loan, with the proceeds to be used to pay a portion of the rent for which Brenda and Hermann were obligated under the lease. The loan agreement was in no way inconsistent with the obligations under the lease. Further, there is nothing in the record to show that all of the parties to both contracts intended to substitute Hermann alone and to release Brenda. The trial court's take-nothing judgment cannot be upheld on the legal theory of novation.

### D. MITIGATION

■ Brenda lastly argues that the take-nothing judgment is supportable because the Marynicks, by allowing Hermann to continue residing at the premises without

paying rent, failed to mitigate damages. As a general rule in Texas, a landlord has no duty to mitigate damages. *See Metroplex Glass Center, Inc. v. Vantage Properties*, 646 S.W.2d 263, 265 (Tex.App.—Dallas 1983, writ ref'd n.r.e.). We recognize that in *Brown v. Republicbank First National*, 766 S.W.2d 203 (Tex.1988), four justices joined a concurring opinion advocating the adoption of a rule requiring mitigation. *See Brown*, 766 S.W.2d at 204 (Kilgarlin, J., concurring) (joined by Justices Spears, Gonzalez and Mauzy). However, the majority expressly declined to address the issue of mitigation. *Id.* Until the supreme court expressly addresses the issue, we are constrained to follow the traditional rule that a landlord need not mitigate damages. *Metroplex Glass Center*, 646 S.W.2d at 265. Thus, the take-nothing judgment is not supportable on the legal theory of mitigation.

### E. SUMMARY

We hold that the trial court's judgment that the Marynicks take nothing on their claim for breach of the lease cannot be upheld on any legal theory which finds support in the record. Consequently, we sustain those portions of points of error one and two which address Brenda's liability under the lease.

### VI. DISPOSITION

We hold that Brenda's joint obligations under the lease continued through the first and second holdover terms by virtue of Hermann's holding over. Although there were no unpaid rentals for the first holdover term, there were eight months of unpaid rent for the second term for which Brenda is jointly and severally liable. We conclude further that Brenda is liable for the stipulated damages to the premises. Finally, we hold that Brenda is not liable under the contract entered by Hermann and Samuel. We reverse the trial court's take-nothing judgment and render judgment that the Marynicks recover from Brenda eight months unpaid rent, the monies expended for the necessary repairs to the premises, and prejudgment and post-judgment interest. We remand to the trial court for determination of the amount of attorney's fees.

OVARD, Justice, dissenting.

I respectfully dissent. I would hold that Brenda is not liable for rent accrued during the second holdover period under the lease. In all other respects I join the majority opinion.

Since we have no findings of facts and conclusions of law, we must affirm the judgment of the trial court if it can be upheld on any legal theory finding support in the evidence. *In the Interest of W.E.R.*, 669 S.W.2d 716, 717 (Tex.1984). The following facts were heard by the trial court. Brenda and Herman held the premises as joint tenants, and yet only Herman actually held over for the first and second holdover periods.

Brenda moved out of the premises two weeks prior to the beginning of the first holdover period, leaving Herman in sole possession of the premises. At that time Brenda did not personally give notice of her departure to the Marynicks. However, prior to the second holdover period, Mr. and Mrs. Marynick learned that Brenda no longer lived on the premises, when Herman told Mrs. Marynick that Brenda had moved out, leaving him alone. Thus, Mr. and Mrs. Marynick had actual notice that Brenda did not intend to holdover for the second holdover period prior to the beginning of the second holdover period. Brenda did not live on the premises at the beginning of the second holdover period nor during any part of the second holdover period. *But cf. Hunger v. Toubin Bros. Inc.*, 164 S.W.2d 765, 767 (Tex.Civ.App.—Austin 1942, writ dism'd) (a landlord has the right to hold-over the tenant for an additional term if the tenant remains on the premises for even one additional day). In our case, Brenda did *not* remain on the premises for any additional days.

Further, Mr. Marynick and Herman entered into a separate loan agreement for rental payments during the first holdover period. Brenda was not aware of this agreement. But for this separate agree-

ment, Herman could not satisfy the terms of the lease. This agreement, in effect, determined Brenda's fate without her knowledge or consent.

The majority cites *Fronty v. Wood,* 20 S.C.L. (2 Hill) 367 (1834), for the proposition that the holdover of one of two joint tenants will be *presumed* to be the holdover of both, where one tenant occupies the premises after the expiration of the initial period, but the other tenant, not in actual possession, fails to give notice that he ceases to hold.

I agree with *Fronty* that a presumption is created and that persons against whom the presumption arises would have to produce evidence to rebut it. *See Reiter v. Coastal States Gas Producing Co.,* 382 S.W.2d 243, 250 (Tex.1964). This presumption, however, should be rebuttable. The presumption that both Brenda and Herman held over for the second holdover period was rebutted in this case by the facts that Brenda did not live on the premises during any part of the second holdover period and that the Marynicks received actual notice that she did not live on the premises during the second holdover period. Because the Marynicks received actual notice during the first holdover period that Brenda had moved out, they could choose to terminate the lease or continue the lease in reliance on Herman's ability to fulfill the obligations of the lease.

Consequently, I would hold that the trial court, as the trier of fact, could determine that, under these facts, Brenda is not liable for rent accrued during the second holdover period.