

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-11-00080-CV

_____

RANCHO MI HACIENDA AND GILDA ARANA, Appellants

V.

LINDA MELTON BRYANT, FORMERLY LINDA OWENS, Appellee

On Appeal from the 62nd Judicial District Court
Hopkins County, Texas
Trial Court No. CV39902

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

This is an appeal of the entry of a judgment in a suit brought by Linda Melton Bryant (formerly Linda Owens and to whom reference is made herein as Bryant) against Rancho Mi Hacienda and Gilda Arana (to whom reference is made jointly herein as Rancho). The facts giving rise to the litigation involve a called 126-acre tract of land in Hopkins County which would have presumably once been the community property and estate of Bryant and her former husband, Coy Lynn Owens.

During Bryant's marriage to Owens, Rancho attempted to purchase the property the subject of the suit from Owens and Bryant. Although there was an April 14, 2008, letter from Owens which Rancho maintained memorialized a verbal contract for deed of the realty, there was nothing signed by Bryant. Apparently relying on its belief that it had an enforceable agreement, Rancho moved its seventy-three Andalusian horses onto the property, paid Owens $25,000.00 and gave Owens' and Bryant's daughter an Andalusian horse of her choosing, purchased a log cabin either to be moved or actually moved onto the premises, and made improvements, including the erection of panels to contain the horses and the provision of water and electric utilities to serve the improvements. Rancho took possession of the property for its horse operation sometime in April 2008.[1] During at least a portion of this time, Owens and Bryant were separated, due to Owens' incarceration in federal prison. Rancho indicated that it had been led to believe the title to the property was held by an entity known as L&L Investments for the benefit of Owens and Bryant.

---

[1]There is no mention of the doctrine of promissory estoppel.

Despite Rancho's belief regarding the status of the title, the realty had been conveyed by deed dated November 8, 2007, and filed of record February 25, 2008, from Dale Long to Bryant solely, there having been no mention in the deed of her then-husband, Owens.

After Rancho gained possession of the property, Bryant filed suit for a divorce from Owens and an agreed decree of divorce was entered June 12, 2008. In this decree of divorce, Bryant was awarded the realty in question and Owens was divested of any title to it.

Following closely on the heels of the entry of the decree of divorce, Rancho filed suit against Owens, Bryant, and L&L Investments, alleging both contractual and tort claims. The contract claim sought specific performance against all three defendants of an alleged oral agreement to sell the subject real estate for a total of $225,000.00, plus an Andalusian horse to be turned over to the daughter of Bryant and Owens, together with other minor consideration. Under the terms of the agreement as alleged in the pleadings, Rancho was to pay $25,000.00 and the horse as down payment, while the remaining $200,000.00 was to bear interest at the rate of four percent per annum for a period of five years. Rancho was to pay interest only during the term of the contract (the pleadings do not specify when these interest payments were to be paid), and the remaining balance of the obligation was to be paid at the end of the five-year term. The tort claim involved alleged real estate fraud in the representations that the defendants would (or could) deliver merchantable title to the property and sought damages for the recovery of the monies paid, the costs of moving the horses from California to Texas, the cost of the improvements made to the

3

property, veterinary bills for the horses, for the loss of five horses who died, and loss of earnings for one year's breeding season.

After having obtained service of citation on the incarcerated Owens, but having received no written answer from him, Rancho took a nonsuit against Bryant and L&L Investments and proceeded to take a default judgment against Owens. This judgment (dated December 22, 2009) awarded specific performance against Owens,[2] together with actual damages, punitive damages, attorney's fees, pre- and post-judgment interest, costs, and post-judgment enforcement remedies.

Rancho apparently remained in possession of the property and sought to levy execution on the 126-acre tract to satisfy the judgment it had taken against Owens. Bryant obtained a judgment in forcible detainer in justice court to eject Rancho from the property.[3]

This case was filed by Bryant, who sought a declaratory judgment that the realty was owned in fee simple solely by Bryant and that Rancho could not acquire an interest in the realty by virtue of the judgment it took against Owens, and she interposes the homestead exemption from forced sale. Bryant also mentions that she seeks recovery for slander of title, trespass to real property, and trespass to try title. Rancho responded by alleging that the realty was community property of Owens' and Bryant's marriage and that while Owens was married to Bryant, he

---

[2]Although it awarded specific performance, it did not describe the lands the subject of the contract or the terms of the contract.

[3]These things are not mentioned in the pleadings except that Bryant indicates a constable had levied on the property and was attempting to conduct a sale of Owens' interest in the property. Further, Bryant's attorney maintained to the trial court that the hearing was intended as a de novo hearing of the appeal of that justice court case wherein, he represented, Bryant had prevailed.

4

defrauded Rancho. Rancho maintains, therefore, that its interest in the community estate was subject to recovery for tortious liability incurred during the marriage.

After a bench trial, the court rendered judgment that Rancho could not levy on the real estate to satisfy its judgment against Owens because Owens owned no interest in the property, also ruling that the real estate was Bryant's homestead and, thus, not subject to levy for execution. The real estate is not described in the judgment.

The court entered findings of fact stating that the property was at all relevant times Bryant's homestead and that she had never signed any contract or agreement for the sale of it. The court also noted that Owens was incarcerated in a federal penitentiary and that because Rancho nonsuited Bryant, she never had an opportunity to defend her interest in the underlying suit.

The court entered conclusions of law stating that Owens owns no interest in the real property in question and that because the real property in question was at all relevant times Bryant's homestead, it was not subject to levy for execution.

Rancho argues on appeal that it, as an unsecured judgment creditor, should be able to reach (presumptively community) property awarded to Bryant in her divorce from Owens. It is worthwhile to note that as this suit came to completion, it became a suit to recover on a judgment, and is not in reality a suit to determine ownership of the property involved.

5

Clearly, Rancho is a judgment creditor of Owens. However, although it appears that the cause of action Rancho held arose during the marriage of Owens and Bryant, it became the judgment creditor of Owens only after Owens had been divested of his interest in the real estate in the action for divorce.

Although Rancho's suit originally included Bryant as a defendant, it made the choice to not pursue an action against Bryant and filed a nonsuit as it pertained to her, electing to pursue judgment only against Owens, who was apparently perceived to be the low-hanging fruit. Rancho now attempts to enforce a judgment in a lawsuit in which (by its nonsuit) it prevented Bryant from participating, against property that was (by then) solely owned by Bryant.

The trial court found that Owens had no interest in the property and that the property was also the homestead of Bryant and as such was not subject to levy for execution.

Rancho raises two primary issues in its appeal. First, it maintains that the trial court erred in determining that Owens did not possess an interest in the realty and, accordingly, the property was not subject to execution of Rancho's judgment against him. Second, it takes the position that the trial court's determination that Bryant's claim of homestead exempted the property from the claims of Rancho, an unsecured creditor, was erroneous.

A bullet-point recitation of the stipulated facts concerning the chronology of the cogent events in this case follows:

- November 8, 2007 -- Deed from Dale Long to Bryant (then Linda M. Owens) solely, without mentioning Owens as a grantee

6

- June 12, 2008 -- Final Decree of Divorce awards community property interest of Owens in the property to wife, now Bryant
- August 11, 2008 -- Rancho files suit against Owens and Bryant
- October 19, 2009 -- Rancho takes interim default judgment against Owens
- December 22, 2009 -- Rancho nonsuits Bryant and takes a final judgment against Owens

Rancho correctly points out that the property deeded to Bryant during her marriage to Owens is presumptively community. TEX. FAM. CODE ANN. § 3.003(a) (West 2006); *see also Cockerham v. Cockerham*, 527 S.W.2d 162, 167 (Tex. 1975). Rancho's contention that all community property is subject to claims of tortious liability incurred by the community during marriage is also accurate. TEX. FAM. CODE ANN. § 3.202 (West Supp. 2011). Where Rancho's reasoning is erroneous regards whether a judgment taken after dissolution of the community solely against one former spouse is enforceable against property awarded to the other (nonjudgment) former spouse.

Rancho relies on a statement from *Carlton v. Estate of Estes*, 664 S.W.2d 322, 323 (Tex. 1983) (per curiam), which states that "a spouse's interest in community property subject to joint management, control, and disposition may be reached to satisfy the liabilities of the other spouse without joinder of both spouses in the suit." Rancho also relies on the holding of this Court in *Inwood Nat'l Bank of Dallas v. Hoppe*, 596 S.W.2d 183, 185 (Tex. Civ. App.—Texarkana 1980, writ ref'd n.r.e.), that the pendency of a divorce does not diminish or limit a creditor's right to proceed against either or both spouses for payment of community debts incurred prior to the divorce decree. Extrapolating from those, Rancho maintains that all of the community property

7

acquired during the marriage of Owens and Bryant is subject to the payment of the judgment taken solely against Owens after the dissolution of the marriage.

However, Rancho does not take into account the case that is more similar to the instant situation, that being *Stewart Title Co. v. Huddleston*, 598 S.W.2d 321 (Tex. Civ. App.—San Antonio), *writ ref'd n.r.e.*, 608 S.W.2d 611 (Tex. 1980) (per curiam). In *Stewart* (as here), suit was not brought by the creditor until dissolution of the marriage and (also as here), the owner of the property was not a party to the suit at the time that judgment was entered.

In *Carlton*, judgment had been taken against Estes during his marriage; the judgment made no mention of Estes' wife. The judgment creditor was seeking to satisfy its judgment in a probate action upon once-community property after dissolution of the marriage due to Estes' demise. The ruling in *Carlton* was that "community property subject to joint management, control, and disposition" of the parties was liable for the community debts. *Carlton*, 664 S.W.2d 322. Because the Estes property was subject to the joint management, control, and disposition, which is characteristic of community property at the time judgment was taken against Estes, the community property was liable for the payment of community debt, despite the fact that Estes' spouse was not mentioned in the judgment. Here, because the divorce (by which the property in question was awarded to Bryant) had been granted before judgment in Rancho's suit against Owens was taken, the community's right to joint management and control of the assets mentioned in *Carlton* no longer existed.

8

In *Inwood National Bank v. Hoppe*, although Hoppe and her husband had divorced and he had been ordered to pay the note, her former husband's liability to Inwood was subsequently discharged in bankruptcy. The suit, then, was instituted by Inwood against Hoppe, not against her former husband. Because suit was brought against her, Hoppe had the ability to raise any defenses she might have had against Inwood's claims. Hoppe was determined to be liable on the debt and the property awarded to her in the divorce was subject to the claims of creditors to satisfy a judgment entered regarding that liability. The inclusion of Hoppe as a party in the suit on the debt distinguishes *Hoppe* from the case now before us.

The suit before us now is not a suit on the debt or one to determine whether Bryant is liable on that debt. Rather, it is a suit brought by Bryant to determine whether the judgment taken solely against Bryant's former husband would subject Bryant's property (formerly community property of her marriage to Owens) to liability to pay the judgment taken against that former husband. It does not.

Having determined that the property awarded to Bryant in her divorce from Owens is not liable to satisfy the post-divorce judgment taken solely against her former husband, this is dispositive of the suit. Accordingly, we do not address the question of homestead. *See* TEX. R. APP. P. 47.1.

9

We affirm the judgment.

Bailey C. Moseley
Justice

Date Submitted:    March 9, 2012
Date Decided:     March 22, 2012