

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-22-00048-CV
_____


IN THE MATTER OF THE MARRIAGE OF
LLOYD GRIFFITH THOMAS AND BONNIE ALLEN THOMAS



On Appeal from the 18th District Court
Johnson County, Texas
Trial Court No. DC-D202000937



Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

MEMORANDUM OPINION

Lloyd Griffith Thomas appeals the trial court's final divorce decree dissolving his marriage to Bonnie Allen Thomas.[1]  On appeal, Lloyd argues that the trial court erred by considering assets belonging to business entities in its property division.  Because we agree, we reverse the portion of the trial court's order setting forth its property division and remand the matter to the trial court for further proceedings consistent with this opinion.  We sever the portion of the trial court's decree granting the parties' divorce and affirm that portion of the trial court's judgment.

## I.      Standard of Review

The Texas Family Code requires the trial court to divide a marital estate in a "just and right" manner, considering the rights of the parties.  *Scott v. Scott*, 805 S.W.2d 835, 841 (Tex. App.—Waco 1991, writ denied); *see* TEX. FAM. CODE ANN. § 7.001; *In re Marriage of Moncey*, 404 S.W.3d 701, 706 (Tex. App.—Texarkana 2013, no pet.).  "Trial courts can only divide community property, and the phrase 'estate of the parties' encompasses the community property of a marriage." *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011) (per curiam)).  "We review the trial court's division of [community] property under an abuse[-]of[-]discretion standard." *Matter of Marriage of Price*, No. 10-14-00260-CV, 2015 WL 6119457, at *3 (Tex. App.—Waco Oct. 15, 2015, no pet.) (mem. op.) (citing *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981)).

---

[1]Originally appealed to the Tenth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001.  We follow the precedent of the Tenth Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

"Property possessed by either spouse during or on dissolution of marriage is presumed to be community property." TEX. FAM. CODE ANN. § 3.003(a). To rebut this presumption, the person seeking to prove the separate character of the property must do so by clear and convincing evidence.[2] TEX. FAM. CODE ANN. § 3.003(b). Separate property is the property owned before marriage as well as "property acquired . . . during marriage by gift, devise, or descent." TEX. FAM. CODE ANN. § 3.001. All other property belonging to the parties that is not separate property is community property. TEX. FAM. CODE ANN. § 3.002. "Any doubt as to the character of property should be resolved in favor of the community estate." *Price*, 2015 WL 6119457, at *7.

"The characterization of property as either community or separate is determined by the inception of title to the property." *Id.* at *6; *see Marriage of Taylor*, No. 06-14-00061-CV, 2015 WL 428121, at *3 (Tex. App.—Texarkana Feb. 3, 2015, no pet.) (mem. op.) (citing *Barnett v. Barnett*, 67 S.W.3d 107, 111 (Tex. 2001)). "Inception of title occurs when a party first has a right of claim to the property by virtue of which title is finally vested." *Price*, 2015 WL 6119457, at *6.

"In order to overcome the community presumption, the burden is on the spouse claiming certain property as separate to trace and clearly identify the property claimed to be separate." *Id.* at *7 (citing *Estate of Hanau v. Hanau*, 730 S.W.2d 663, 667 (Tex. 1987)); *see Cockerham v. Cockerham*, 527 S.W.2d 162, 167 (Tex. 1975)). "Tracing involves establishing the separate origin of the property through evidence showing the time and means by which the spouse

---

[2]"'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007.

originally obtained possession of the property." *Price*, 2015 WL 6119457, at *6. "Separate property will retain its character through a series of exchanges so long as the party asserting separate ownership can overcome the presumption of community property by tracing the assets on hand during the marriage back to property that, because of its time and manner of acquisition, is separate in character." *Id.* (citing *Cockerham*, 527 S.W.2d at 168).

Characterization of marital property often involves questions of fact. *Maldonado v. Maldonado*, 556 S.W.3d 407, 414 (Tex. App.—Houston [1st Dist.] 2018, no pet.). "When faced with conflicting evidence, the fact-finder may choose which witnesses to believe and may resolve inconsistencies in any witness' testimony." *Bouknight v. Bouknight*, No. 06-14-00034-CV, 2014 WL 4930818, at *2 (Tex. App.—Texarkana Oct. 2, 2014, pet. denied) (mem. op.) (citing *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986)). As a result, "[w]e do not interfere with the fact-finder's resolution of conflicts in the evidence or its determination of the weight and credibility of witness testimony, as its determinations on these matters are generally considered conclusive." *Id.*

## II.     Factual and Procedural Background

Lloyd and Bonnie married on June 29, 2014. In September 2020, Lloyd filed for divorce. At the July 2021 jury trial, the parties focused their attention on six parcels of real estate, a Textron savings account, and an Edward Jones IRA. The real estate at issue included the following: (1) 5304 Odell Dr., Fort Worth, Texas (Odell Property); (2) 3686 FM 100, Honey Grove, Texas (Honey Grove Property); (3) 307 E. Highway 67, Keene, Texas (HOP Building); (4) 1413 Mimosa St., Cleburne, Texas (Mimosa Property); (5) 2417 County Road 415, Cleburne, Texas (Coyote House); and (6) 5200 County Road 913A, Joshua, Texas (Joshua House).

4

As for the first piece of real estate at issue, Lloyd testified that he purchased the Odell Property before the marriage in 2007, and at trial, Bonnie disclaimed any interest in it. Even so, the deed to the Odell Property showed that it belonged to Angle Enterprises, LLC, which was incorporated by Lloyd in 2006 for the purpose of acquiring and renting real property. David Christian Read, a licensed real estate agent, testified that he estimated the fair market value of the Odell Property to be "roughly $150,000." The jury found, and the trial court rendered judgment, that the Odell Property was Lloyd's separate property and that its fair market value was $153,000.00.

Next, Lloyd and Bonnie both testified that Bonnie purchased the Honey Grove Property before the marriage. Lloyd said that, during the marriage, Bonnie sold it to his uncle and aunt, Donald and Mary Ross. According to Lloyd, he later paid a little over $161,000.00 to a private investor "for the sole purpose of preserving equity for [Bonnie]." Lloyd testified that, as a result, the Rosses deeded the Honey Grove Property to Angle Enterprises in August 2020, a month before the divorce was filed. Claiming that he had reacquired that property during the marriage, Lloyd asked the jury to find that the Honey Grove Property was community property. Bonnie acknowledged that Lloyd had paid off an investor for her but said "something nefarious was up" when Lloyd had the property deeded to his business instead of to her. Estimates of fair market value from Lloyd, Read, and Bonnie, who was also a licensed real estate agent, ranged between $470,000.00 to $475,000.00. The jury determined that the Honey Grove Property was community property and was valued at $473,000.00. While the trial court rendered judgment in accordance with the jury's valuation of the property, it granted Bonnie's motion for judgment notwithstanding the verdict and awarded her a "100% separate property interest" in the Honey

5

Grove Property. The trial court also awarded Lloyd $160,737.23 in reimbursement for monies used to benefit the Honey Grove Property, which was secured by an equitable lien on the property.

As for the HOP Building, a 9,334 square-foot building, Lloyd testified that it was purchased during the marriage in November 2014 and should be considered community property, but Bonnie objected to such a characterization of the property. According to Bonnie, who paid $100,000.00 for the building, she used equity from a home purchased prior to the marriage to pay for the building. The deed to the HOP Building showed that it was granted to Med Surge of North Texas, LLC, a company that Bonnie claimed was established prior to marriage. Bonnie testified that she owned eighty-five percent of Med Surge, that she had given Lloyd an interest in the company at some point, and that an unnamed third party owned the remaining interest. While Lloyd estimated that the HOP Building was worth $1,886,800.00 and Read's comparable assessment yielded a value of $460,000.00, Bonnie testified that the tax assessor had valued the property at $250,000.00, which she characterized as "a very generous assessment for the building" based on her real estate experience. The jury concluded that the HOP Building was community property and had a fair market value of $250,000.00. While the trial court rendered judgment in accordance with the jury's valuation of the property, it granted Bonnie's motion for judgment notwithstanding the verdict, set aside the jury's verdict that the property was community property, and awarded her the HOP Building.

The fourth property, the Mimosa Property, was acquired by Lloyd before the marriage. Lloyd introduced a deed, executed on December 30, 2018, which demonstrated that Angle Enterprises owned the Mimosa Property. Bonnie disclaimed interest in the property but sought

6

reimbursement of $60,000.00 she had given to him to pay off the property, which was valued at $226,000.00. The trial court entered final judgment in accordance with the jury's verdict that the Mimosa Property was Lloyd's separate property and awarded Bonnie $30,000.00 in reimbursement, which was secured by a lien on the Mimosa Property.

The Coyote House was purchased by Bonnie using equity from a home that was her separate property. In 2017, Bonnie gave Lloyd an undivided one-half interest in the Coyote House, and Bonnie's signed deed to Lloyd memorializing that gift showed that the deed identified both parties as married. Lloyd testified that Bonnie gave him an interest in the Coyote House because he "took over the mortgage payments and the mortgage on the second refi and third refi on the house was in [his] name alone." The jury determined that the Coyote House was one hundred percent Bonnie's separate property, but the trial court rendered judgment giving Lloyd and Bonnie each an undivided one-half interest in the Coyote House, which was valued at $800,000.00.[3]

As for the last property at issue, Lloyd introduced a warranty deed showing that he had acquired the Joshua House prior to the marriage, and Bonnie agreed that it was Lloyd's separate property. The trial court awarded the Joshua House, valued at $800,000.00, to Lloyd.

Next, Lloyd sought to establish a portion of the Textron savings account, which had a balance of $195,490.23 as of September 20, 2020, as his separate property. Lloyd introduced a statement showing that the amount in the Textron savings account on the date of his marriage was $27,123.85. As a result, the trial court awarded Lloyd the first $27,123.85 as his separate

---

[3]"Either spouse may give separate property to the other," and "[p]roperty acquired by gift during marriage is the separate property of the spouse to whom it is given." *Scott v. Scott*, 805 S.W.2d 835, 840 (Tex. App.—Waco, writ denied).

7

property, in accordance with the jury's verdict. Although Lloyd agreed to split the remainder of the account with Bonnie, there was no disposition of the remaining amount.

As for the Edward Jones IRA, Lloyd testified that he was employed by Lockheed Martin before his marriage, left the employment in 2012, and "rolled [his] 401(k) from Lockheed-Martin [sic] over to an Edward Jones IRA." Although Lloyd did not have a statement from the date of his marriage, an April 30 to May 27, 2016, statement showed that his account was valued at $371,412.37 at the time.[4] An August to September 2020 statement showed that the account was valued at $433,649.72. The jury awarded ten percent of the first $371,412.37 to Bonnie, but the trial court remitted that award to five percent and awarded Lloyd the remaining ninety-five percent.

## III. The Trial Court Erred by Considering Properties Belonging to Business Entities

On appeal, Lloyd argues that the trial court erred when determining that the Honey Grove Property and HOP Building were Bonnie's separate property.[5] Even though he was awarded the Odell and Mimosa Properties, Lloyd also prays that we declare them to be the property of Angle Enterprises. Because the trial court erred by considering those properties when dividing the marital estate, we sustain Lloyd's complaints.

The evidence at trial showed that the Odell, Honey Grove, and Mimosa Properties were deeded to Angle Enterprises, LLC, and that the HOP Building was deeded to Med Surge of North Texas, LLC. As a result, those properties belonged to business entities. "[W]hen property

---

[4]The statement identified "Company Pre-tax Rollovers" in the amount of $379,737.04.

[5]Lloyd lodges no complaint about the Coyote House, Joshua House, or the first $27,123.85 of the Textron savings account. Although his prayer asks that he be awarded the first $371,412.37 of the Edward Jones IRA, we find the issue inadequately briefed. See TEX. R. APP. P. 38.1(i).

is conveyed to an entity . . . , it becomes the property of the entity and loses its separate or community character." *Matter of Marriage of Nash*, 644 S.W.3d 683, 708–09 (Tex. App.— Texarkana 2022, no pet.) (quoting *Matter of Marriage of Hudson*, No. 06-18-00011-CV, 2018 WL 4656288, at *3 (Tex. App.—Texarkana Sept. 28, 2018, no pet.) (mem. op.) (citing *Lifshutz v. Lifshutz*, 199 S.W.3d 9, 27 (Tex. App.—San Antonio 2006, pets. denied); *Marshall v. Marshall*, 735 S.W.2d 587, 594 (Tex. App.—Dallas 1987, writ ref'd n.r.e.)); *see Mason v. Mason*, No. 03-17-00546-CV, 2019 WL 1967166, at *6 (Tex. App.—Austin May 3, 2019, no pet.) (mem. op.) ("property owned by a limited liability company is neither the community property nor the separate property of its members and, as a result, is not subject to award or division in divorce" (citing Tex. Bus. Orgs. Code Ann. § 101.106(b))); *Mathis v. Mathis*, No. 01-17-00449-CV, 2018 WL 6613864, at *4 (Tex. App.—Houston [1st Dist.] Dec. 18, 2018, no pet.) (mem. op.); *Mandell v. Mandell*, 310 S.W.3d 531, 539 (Tex. App.—Fort Worth 2010, pet. denied).

We find that the trial court erred by awarding property owned by entities in the divorce decree and by placing a lien on the Honey Grove and Mimosa Properties to secure payment of the parties' reimbursement claims. Also, trial courts consider the "size of the separate estates" in making a just and right division of community property, *Matter of Marriage of Elabd*, 589 S.W.3d 280, 287 (Tex. App.—Waco 2019, no pet.) (quoting *Murff*, 615 S.W.2d at 699), and it appears that the trial court did so here. As a result, we reverse the property division portion of the trial court's judgment and remand the matter to the trial court for further proceedings.[6]

---

[6]We find that our ruling on this issue is dispositive of the remaining arguments properly raised by Lloyd on appeal. Lloyd argues that the trial court did not address the remainders of the Textron savings account or the Edward Jones

## IV.    Conclusion

We reverse the portion of the trial court's order setting forth its property division and remand the matter to the trial court for further proceedings consistent with this opinion.  We sever the portion of the trial court's decree granting the parties' divorce and affirm that portion of the trial court's judgment.[7]


                                        Scott E. Stevens
                                        Chief Justice


Date Submitted:     January 24, 2023
Date Decided:       February 14, 2023

---

IRA, the parties' respective interests in Med Surge, and the parties' debts.  Lloyd's arguments on these matters can be presented on remand so that the trial court has a proper opportunity to address them.

[7]Lloyd also filed a motion to strike the Appellee's response and for sanctions.  We deny Lloyd's motion.