**Maria GUERRA, Appellant,**

v.

**Gregorio GUERRA, Appellee.**

**No. 13518.**

Court of Civil Appeals of Texas.

San Antonio.

Sept. 16, 1959.

Rehearing Denied Oct. 7, 1959.

Victor H. Negron, San Antonio, for appellant.

Emil O. Scherlen, Jose F. Ross, San Antonio, for appellee.

MURRAY, Chief Justice.

This suit for divorce was instituted by Gregorio Guerra against his wife, Maria Guerra, on January 2, 1959. On January 13, Maria Guerra filed her answer and cross-action herein and asked for support for herself and children. Defendant's petition for alimony and child support was set for a hearing on January 28. At this hearing, Gregorio was given custody of the three eldest children, Rosa Maria, six years of age, Martha, five years, and Frances, four years, and Maria was given the custody of the youngest child, Jose Louis, one and one-half years of age. Gregorio was ordered to pay $15 twice a month for child support, and was further ordered to keep up the payments of $30 per month on their home at 202 Bradley Street in San Antonio. The parties were respectively given the right to visit their children. On April 16, 1959, an order was entered granting Gregorio a divorce and awarding him the care and custody of all four of the children, from which judgment Maria has prosecuted this appeal.

The evidence shows that Gregorio and Maria were married on July 2, 1952, and there were born to them the four children whose names appear above. Maria testified that their trouble began in 1956, when Gregorio's half-sister, Micaela Guerra, twenty-two years of age, came from Mexico to San Antonio to live with her father, her uncle and her brother at 3222 San Fernando Street. Maria quarreled with Gregorio about paying so much attention to his half-sister Micaela. She testified that Gregorio took Micaela to drive-in

theatres and went out with her, that this caused family quarrels, and on June 1, 1958, they separated. Gregorio went to live with members of his family at 3222 San Fernando Street, where he also cared for their three children whose custody had temporarily been given to him by the District Court of Bexar County. This arrangement did not prove satisfactory, and Gregorio and Micaela rented a two-room apartment at 258 North Laredo Street, where they resided with the three children.

Gregorio testified that the trouble between him and Maria was brought about by her uncleanliness and lack of care of the children, and by her constant quarreling. There was evidence that the oldest girl had started to school, but on account of boils on her body and uncleanliness of her clothes and body was sent home by the school authorities. The youngest child became very sick from diarrhea and dehydration. Gregorio was not living with his family at this time, but when he heard of the children's sickness he went to the house and got the sick child and took it to the Robert B. Green Hospital, where it was treated for more than a month and rapidly regained its health. Gregorio testified that his wife would not go with him to take the child to the hospital, and she told him, you made him and you will know what to do. She took the sick child to his car and threw it on the front seat. He lost his temper and struck her in the face with his hand. He got Micaela to go with him to take the child to the hospital. On November 24, 1958, he learned that the little girls were sick with boils on their bodies, and he went and got them and took them to the District Attorney's office and shortly thereafter the District Court awarded the custody of these three children to Gregorio. Mrs. Penaloza, who is employed in the Domestic Relations Department of the Bexar County District Attorney's office, testified that she saw the children, that "they all had sores, but the oldest one was practically covered with sores, and the second one had sores, and the little one didn't

have as many, but it looked like it was contagious." She sent Maria a notice to come to her office and when Maria came she was filthy and gave off such a bad body odor that she became sick at her stomach and had to go to the rest room; that she tried to hold a piece of cardboard between herself and Maria to avoid the bad odor, and had to stand near the window to get her breath.

The evidence further shows that the home in which the Guerras lived at 202 Bradley Street was a one-room frame building. There was no running water in the house, but there was a faucet in the yard from which water could be secured. There was no bath tub, shower, or other utilities in the house, except electric lights. Maria cooked on a one-burner butane oil stove. At one time she had a four-burner stove, but after Gregorio left his family the stove was taken by the Western Auto, and she thereafter cooked on the one-burner stove which was loaned to her by neighbors. At the time of the trial Gregorio was living at 258 N. Laredo Street with his half-sister, Micaela, and the three little girls. They were well of their sores and ate their food better. Micaela was able to keep them clean and to keep them dressed in clean clothes. The apartment at 258 N. Laredo Street was a two-room apartment and Micaela slept in one room with the oldest girl and Gregorio slept in the other room with the other two children. Gregorio had been employed by the Public Service Company in San Antonio for a number of years and made approximately $200 per month. The oldest girl is now in school and is doing nicely.

Gregorio gave the following testimony in answer to questions propounded by the trial judge:

"Q. What did you separate from your wife for? A. I separated from her that day because we were always arguing about the children, that she did not take good care of the children.

"Q. Is it your testimony that the house was always dirty and the children dirty and the rooms dirty and no meals every day when you would get home from work? A. Yes, sir, exactly.

"Q. Did you talk to your wife about it? A. Many times we talked about it, but she never paid any attention.

"Q. Well, what would she say to you about it? A. She just said: 'Well, after a little while; wait a little while, a little while.'"

In answer to questions propounded by appellant's counsel Gregorio further testified as follows:

"Q. Is it your testimony—I won't hold you much longer—is it your testimony that you are seeking the—that the reason you are seeking the divorce is because she is filthy? A. Because she is very filthy and she don't take good care of the children, that's why I'm asking for a divorce.

"Q. Are you able to tell us when she started being filthy and not taking care of the children, more or less, after you got married? A. Yes; about 1953. I think we started arguing on account of that.

"Q. How many children were born after 1953? A. Two, three."

This divorce was granted by the trial court upon the general grounds of cruel treatment. Article 4629, Vernon's Ann. Civ.Stats., provides that a divorce may be granted "where either party is guilty of excesses, cruel treatment, or outrages toward the other, if such ill treatment is of such a nature as to render their living together insupportable."

It is well settled law in this State that a divorce may be granted on the ground of cruel treatment on the part of one spouse toward the other, and such cruel treatment need not go to the extent of physical violence to the body, nor need it be shown that such cruel treatment is affecting the health of the complaining spouse. All that is now required is that such cruel treatment renders their further living together insupportable. McCullough v. McCullough, 120 Tex. 209, 36 S.W.2d 459.

Whether the wife's conduct renders further living together insupportable is largely a question of fact. Dimmitt v. Dimmitt, Tex.Civ.App., 263 S.W.2d 648; Mobley v. Mobley, Tex.Civ.App., 263 S.W. 2d 794; Dahl v. Dahl, Tex.Civ.App., 253 S.W.2d 691; Ingham v. Ingham, Tex.Civ. App., 240 S.W.2d 409; Gaines v. Gaines, Tex.Civ.App., 234 S.W.2d 250.

"Cruel treatment" as used in Art. 4629, supra, means such treatment by one spouse toward the other spouse as is incapable of being supported or borne, unendurable, insufferable or intolerable. Ingham v. Ingham, supra.

Whether or not cruel treatment exists depends largely upon the peculiar facts in each case and it is difficult to lay down a general rule that applies to all cases. Mobley v. Mobley, supra.

We have not set out all the facts, but enough to show the general situation existing between the spouses. After hearing all the evidence the trial court granted Gregorio a divorce and gave him care and custody of the four children. The evidence showed that he expected to have the four children live with him and his half-sister, Micaela. He would of necessity have to have some woman care for these children. The trial judge must have believed the charges made by Maria, of immoral conduct between Gregorio and Micaela, to be false, or he would not have awarded the children to the father to be cared for by Micaela. This charge being false, must have wounded the feelings of Gregorio very deeply. This evidence, to-

gether with other evidence, some coming from disinterested witnesses, was full and satisfactory and sufficient to sustain the trial court in granting the divorce.

The judgment is affirmed.