

# NUMBER 13-23-00158-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

### IN THE MATTER OF THE MARRIAGE OF
### VANESSA LEESON AND CLAUDE RAY LEESON JR.

---

### ON APPEAL FROM THE 105TH DISTRICT COURT
### OF KLEBERG COUNTY, TEXAS

---

# MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Fonseca
Memorandum Opinion by Justice Fonseca**

Appellant Claude Ray Leeson Jr. (Ray) challenges the trial court's final decree of divorce from appellee Vanessa Leeson. By four issues, Ray argues the trial court erred by: (1) denying his request for a jury trial; (2) denying his motion for new trial; (3) awarding Vanessa a disproportionate share of the marital estate; and (4) awarding Vanessa unconditional appellate attorney's fees. We affirm in part and reverse and remand in part.

## I.  BACKGROUND

The parties were married in 1986 and ceased living together in 2020. Vanessa filed a petition for divorce on June 10, 2020; Ray answered with a general denial and filed a counterpetition on July 16, 2020. In their live pleadings, both parties accused each other of committing fraud against the community and of "cruel treatment . . . of a nature that renders further living together insupportable." They both requested that they be awarded a disproportionate share of the marital estate for that and several other reasons.[1] And they both asked the Court "to reimburse the community estate for funds or assets expended by the community estate for the benefit of [the other party]'s separate estate."

On February 4, 2021, the trial court rendered temporary orders which, among other things, appointed a receiver to take possession and control of the parties' assets, including an HVAC supply business, several rental properties, various vehicles and industrial equipment, and other real and personal property.

Trial was set for November 14, 2022. At a status hearing on April 26, 2022, the trial court ordered both parties and the receiver to file, on or before June 27, 2022, updated sworn inventories characterizing and evaluating the parties' properties. The trial court also ordered all discovery to be completed by that date. The parties and receiver timely filed sworn inventories per the court's directive. On June 28, 2022, Ray filed a "Request for Jury Trial" and paid the $10 jury fee. A jury trial was set for November 14, 2022.

At a pre-trial hearing on September 13, 2022, the trial court ordered Ray to file

---

[1] The parties both stated that there were no children born of the marriage or adopted who were under the age of eighteen at the time of the pleadings.

proposed jury charge questions and to serve them on Vanessa and the receiver on or before October 4, 2022.[2]

On November 14, 2022, with a venire panel having already been assembled, the trial court held a hearing on a wide-ranging motion in limine filed by Vanessa. At the beginning of the hearing, Vanessa's counsel complained that the motion in limine "had to be done blindly" because Ray had not yet filed proposed jury charge questions as previously directed by the court.[3] Vanessa also alleged that Ray had failed to timely respond to her discovery requests, though Ray disputed this.

As to the specific elements in the motion in limine, Vanessa first requested that Ray be prohibited from introducing "[a]ny reference to adultery committed by Vanessa." Vanessa stipulated that she committed adultery during the marriage, and the trial court granted the motion in that respect.

Vanessa next moved to prohibit the introduction of evidence of cruel treatment by her which had not been "identified by timely response" to discovery requests. The trial court specifically asked Ray whether, in response to discovery requests, he had provided a specific factual basis for his cruel treatment claim. In response, Ray's counsel pointed to his original counterpetition; however, Ray's counterpetition does not contain any specific facts regarding that claim. Ray's counsel then mentioned that Vanessa had "pulled a gun on" Ray; however, he could not point to any pleading or discovery response containing that specific allegation. The trial court granted the motion in limine in this

---

[2] No transcript of the September 13, 2022 hearing appears in the appellate record. However, Ray does not dispute what transpired at that hearing.

[3] The record reflects that Ray's proposed jury charge was filed with the district court clerk at 8:24 a.m. on November 14, 2022. The proposed charge included questions on, among other things: (1) who was at fault in the breakup of the marriage; (2) how certain properties were characterized; (3) how certain properties were valued; and (4) the disposition of certain community properties.

respect and ruled that, though Ray "can argue cruel treatment" at trial, he would not be permitted to adduce evidence that Vanessa brandished a gun at him because there were no discovery responses in support of that specific allegation. *See* TEX. R. CIV. P. 193.6.

Similarly, Vanessa argued that, because Ray had failed to provide discovery responses detailing the legal theories or factual basis supporting his reimbursement claim, he should not be able to introduce evidence of that claim at trial. In response, Ray's counsel pointed out that Vanessa also failed to specify the factual basis supporting her reimbursement claim. The trial court granted the motion in limine in this respect.

In an offer of proof, Ray testified that he disagreed with the receiver's valuation of various pieces of personal property, including trucks, a motor home, and an all-terrain vehicle. Ray also stated that he did extensive work to improve Vanessa's separate property in New Mexico, for which he sought reimbursement. He accused Vanessa of withdrawing funds from joint accounts and liquidating certain community assets during the pendency of the case, which he claimed was a violation of the temporary orders. He claimed that Vanessa had incurred over $300,000 in living expenses in the two years prior to the hearing. And he claimed that Vanessa was violent with him, pulled a gun on him and their daughter, assaulted his employee, and committed adultery.

Counsel asked Ray about a commercial rental property located on East Caesar Avenue in Kingsville which was titled in both parties' names. Ray testified he bought it as a single person, but the seller (a recent divorcée herself) put Vanessa's name on the deed as well "because she felt like she was maybe some way protecting her." Ray also said he purchased three other properties before he married Vanessa—on East Santa Gertrudis Street, West Kenedy Avenue, and West Kleberg Avenue. He acknowledged that

4

community funds may have been used to improve those properties.

Following the offer of proof, Vanessa's counsel asked, "Are you now prepared to go forward with the evidence without the benefit of the jury?" Ray's counsel replied that he was not. The trial court stated: "The issue I need to deal with now is: Is there a jury issue?" Ray's counsel replied by noting that there were disputes as to valuations of property, but he acknowledged that any jury findings on the division of property would be "only advisory to this Court." Ray's counsel further argued that the jury was necessary to determine "fault in the breakup of the marriage."

Vanessa's counsel replied in part by stating: "If they want a jury, they're entitled to a jury, but they're not going to be entitled to put on evidence in front of the jury that they can't put on in front of you because of the rules of evidence." The trial court then asked the receiver whether there were any jury issues regarding property valuation. The receiver replied by explaining that, earlier in the proceedings, he and counsel for both parties agreed to "use estate funds to retain one real property appraiser and one personal property appraiser." The receiver then stated that, in his report, he listed three valuations for each piece of community property—one from Ray's sworn inventory, one from Vanessa's sworn inventory, and one by the retained appraiser. The receiver stated that he believed the parties agreed to have single appraisers in order "to avoid extra expenses" and to avoid a "battle of the experts," but "whether the parties choose to contest those, I think that's up to them." The court then stated:

> But this is almost like arbitration or like a mediation to me to where if y'all agree, then once you sign the paperwork, we agree to have these two appraisers come in and do their job to help the Court and the legal system, it's going to be hard for me to sit there and say we need a jury to sit there and decide if this is accurate or not.

5

Ray's counsel disputed that Ray had agreed to abide by the appraiser's valuations "if there were some instances where they were incorrect."

Vanessa's counsel argued that, if Ray intended to testify about property values as an owner, he needed to designate himself as an expert in discovery responses, and he did not. The trial court denied Ray's request to amend his pleadings, and it ruled that it would use the appraisers' reports to determine the property values. It then asked again whether there were any jury issues to be decided. Ray's counsel suggested that, if the venire members were dismissed, he wanted to be able to depose or cross-examine the appraisers. The court denied the request and, having determined that there were no issues of fact to be decided by a jury, discharged the venire panel. A bench trial began the following morning, at which both parties announced ready.

Following trial, the court declared the parties divorced, and it signed a final decree of divorce on March 10, 2023, awarding specific pieces of real and personal community property to each spouse. The decree states that "both parties . . . elected to waive a jury and proceed to trial before the court." Per Ray's request, the trial court later issued findings of fact and conclusions of law, including findings that: (1) both parties committed adultery during the marriage; and (2) Ray "is guilty of cruel treatment toward [Vanessa] of a nature that renders further living together insupportable." The findings further stated:

> The value of community property assigned by the court in making a just and right division is that value provided to the court by the [c]ourt-[a]ppointed Receiver, and based upon the appraisals secured by the Receiver and shared with the parties, except in those instances where the Receiver declined to provide a value. The remaining values were determined by the court from the admissible evidence presented at trial.
>
> . . . .
>
> Both parties raised claims of reimbursement in favor of the community property estate against the separate property estate of the other spouse.

6

As all claims for reimbursement were in favor of the community property estate, the court resolved such claims by equitable principles, including that the reimbursement claims could be offset, one against the other. All claims for reimbursement proven by a preponderance of the evidence were considered in the overall division of the community property awarded to each spouse.

. . . .

Fault grounds for divorce were considered and found by the court, but a finding of fault does not require a different division of the estate of the parties. Fault grounds were however, relevant factors which were considered in making a just and right division of the estate of the parties.

This appeal followed.

## II. RIGHT TO JURY TRIAL

By his first issue, Ray contends the trial court erred by denying his request for a jury trial.

### A. Applicable Law and Standard of Review

The United States and Texas Constitutions guarantee the right to trial by jury. *See* U.S. CONST. art. III, § 2; TEX. CONST. art. I, § 15 ("The right of trial by jury shall remain inviolate."); *see Gen. Motors Corp. v. Gayle*, 951 S.W.2d 469, 476 (Tex. 1997) (orig. proceeding) ("The right to jury trial is one of our most precious rights, holding 'a sacred place in English and American history.'" (quoting *White v. White*, 196 S.W. 508, 512 (Tex. 1917))). And the Texas Family Code expressly provides that in a suit for divorce, "either party may demand a jury trial." TEX. FAM. CODE ANN. § 6.703; *see also Nealy v. Nealy*, No. 13-14-00689-CV, 2016 WL 4045240, at *4 (Tex. App.—Corpus Christi–Edinburg July 28, 2016, pet. denied) (mem. op.).

Under Texas Rule of Civil Procedure 216, "[n]o jury trial shall be had in any civil suit, unless a written request for a jury trial is filed with the clerk of the court a reasonable time before the date set for trial of the cause on the non-jury docket, but not less than

7

thirty days in advance." TEX. R. CIV. P. 216. "When a jury trial is available as a matter of right," a request that is timely under Rule 216 "is presumptively reasonable and ordinarily must be granted absent evidence that granting the request would '(1) injure the adverse party, (2) disrupt the court's docket, or (3) impede the ordinary handling of the court's business.'" *In re A.L.M.-F.*, 593 S.W.3d 271, 283 (Tex. 2019) (quoting *Halsell v. Dehoyos*, 810 S.W.2d 371, 371 (Tex. 1991)); *see* TEX. FAM. CODE ANN. § 6.703.

We review the trial court's denial of a jury demand for an abuse of discretion. *In re A.L.M.-F.*, 593 S.W.3d at 283; *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996); *In re Marriage of Comstock*, 639 S.W.3d 118, 129 (Tex. App.—Houston [1st Dist.] 2021, no pet.); *see City of Garland v. Dall. Morning News*, 969 S.W.2d 548, 558 (Tex. App.—Dallas 1998) ("Denials of the right to a jury trial are closely scrutinized."), *aff'd*, 22 S.W.3d 351 (Tex. 2000). A trial court abuses its discretion when its decision is arbitrary, unreasonable, or without reference to guiding principles. *In re A.L.M.-F.*, 593 S.W.3d at 282.

**B.    Waiver**

In civil cases, the right to a jury trial may be waived by (1) agreeing to a bench trial, (2) failing to timely pay a jury fee, (3) failing to timely request a jury trial, (4) failing to appear for trial, or (5) failing to object to a bench trial despite a properly perfected request. *In re Marriage of Harrison*, 557 S.W.3d 99, 135 (Tex. App.—Houston [14th Dist.] 2018, pet. denied); *see* TEX. R. CIV. P. 216; *In re Wells Fargo Bank Minn. N.A.*, 115 S.W.3d 600, 606–07 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding [mand. denied]).

There is no dispute that Ray's request for jury trial and payment were timely. *See* TEX. R. CIV. P. 216. However, Vanessa argues that Ray waived his right to jury trial by

8

failing to object when the trial court began the bench trial on November 15, 2022. She

cites *Rodriguez v. Texas Department of Mental Health & Mental Retardation*, 942 S.W.2d

53, 56 (Tex. App.—Corpus Christi–Edinburg 1997, no pet.). In that case, we held that the

appellants waived their right to a jury trial because they "failed to object to the discharge

of the jury after the trial court had announced that the case had been disposed of." *Id.*

(noting that "[a] party waives his right to a jury trial by failing to object when the trial court

instead undertakes to try the case before the bench" (first citing *Sunwest Reliance

Acquisitions Grp., Inc. v. Provident Nat'l Assurance Co.*, 875 S.W.2d 385, 387 (Tex.

App.—Dallas 1993, no writ); then citing *Ball v. Farm & Home Sav. Ass'n*, 747 S.W.2d

420, 428 (Tex. App.—Fort Worth 1988, writ denied); and then citing *Fishing Publ'ns, Inc.

v. Williams*, 661 S.W.2d 323 (Tex. App.—Corpus Christi–Edinburg 1983, no writ)).[4] In

*Rodriguez*, "[t]he record clearly indicate[d] that both parties agreed to submit the case to

the trial court in [a] summary fashion without a conventional trial or evidentiary hearing,

but merely on the basis of numerous exhibits tendered to the trial court under the guise

of a motion in limine." *Id.* at 55. We noted that "[t]he proceedings below can, perhaps,

best be described as an informal summary judgment on the question of liability raised by

the consent of both parties at the beginning of the jury trial." *Id.* at 55–56 (citing *Nassar v.

Hughes*, 882 S.W.2d 36, 38 (Tex. App.—Houston [1st Dist.] 1994, writ denied)).

In his reply brief, Ray cites *Browder v. Moore*, 659 S.W.3d 421 (Tex. 2022) (per

curiam), for the proposition that "a formal exception to the trial court's ruling to dismiss

---

[4] In her argument regarding waiver, Vanessa notes that Ray failed to timely comply with the trial court's order to file proposed jury charge questions no later than October 4, 2022. (As noted, Ray filed proposed jury charge questions on the morning of the motion in limine hearing.) Vanessa does not explicitly argue that this failure resulted in Ray waiving his right to a jury trial, nor does she cite any authority that would support such a conclusion.

the jury is not required to preserve the complaint for appeal." In *Browder*, the trial court denied the appellant's request for a jury trial in a suit seeking conservatorship and possession of a minor child. *Id.* at 422. The Texas Supreme Court affirmed the decision, finding that "the trial court did not abuse its discretion in ruling that Browder's jury demand was untimely." *Id.* at 423. However, the Court noted that, once a trial court has issued an adverse ruling on a request for jury trial, there is no requirement for an appellant to then "take the further step of objecting to that ruling to preserve it for appellate review." *Id.* at 423–24 (noting that "[o]nce the trial court denied Browder's request for a jury trial, Browder had no choice but to go forward with the bench trial. . . . Browder did not need to renew that request or object to the court's adverse ruling to preserve his complaint regarding the denial of a jury trial for appellate review"); *see Bonsmara Nat. Beef Co. v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 396 n.22 (Tex. 2020) ("If simply adhering to an adverse order while continuing to litigate waived review of that order on appeal from a final judgment, there would be few orders left to review."); *see also* TEX. R. APP. P. 33.1 (regarding error preservation).

Here, the trial court unequivocally denied Ray's request for a jury trial at the conclusion of the November 14, 2022 hearing. Pursuant to *Browder*, Ray did not waive his jury trial request by failing to object to the bench trial when it began the following day or by announcing ready at that time. *See* 659 S.W.3d at 423. Moreover, there was no evidence adduced at the November 14, 2022 hearing that a jury trial would have injured Vanessa, disrupted the court's docket, or impeded the ordinary handling of the court's business. *See In re A.L.M.-F.*, 593 S.W.3d at 283; *In re Marriage of Comstock*, 639 S.W.3d at 131 (noting that "a trial court abuses its discretion when it denies a jury

10

demand . . . when the party seeking to avoid a jury trial supplies no evidence to support the denial"); *Sims v. Fitzpatrick*, 288 S.W.3d 93, 103–04 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (concluding that trial court abused its discretion in denying a timely filed jury demand when parties opposing demand pointed to no evidence that granting jury trial would have injured them, disrupted court's docket, or impeded ordinary handling of court's business).[5]

We therefore disagree that Ray waived his right to a jury trial.

## C.   Lack of Jury Issues

Even if Ray did not waive his right to a jury trial, Vanessa contends that the denial of such was harmless because Ray "was unable, solely by his own pre-trial conduct, to identify a single jury issue that was not foreclosed by a combination of the pleadings, pre-trial discovery answers, and sworn inventories." *See* TEX. R. APP. P. 44.1 (regarding reversible error in civil cases); *In re J.N.*, 670 S.W.3d 614, 621 (Tex. 2023) ("[W]hen a trial court's error causes a party to lose her right to present her case to a jury, that error is harmful if there were material fact issues for a jury to resolve."); *Halsell*, 810 S.W.2d at 372 ("A refusal to grant a jury trial is harmless error only if the record shows that no material issues of fact exist and an instructed verdict would have been justified."). Specifically, Vanessa argues that "[a] significant part of what [Ray] wanted resolved by a jury . . . had not been properly and timely plead[ed], or timely identified in discovery." She relatedly contends that "[t]he parties were to be bound by that contained in their inventories" and "[i]f a claim was to be asserted at trial, that claim had to appear in that

---

[5] As noted above, at the time the trial court denied Ray's request for jury trial, a venire panel had already been assembled and was available for voir dire.

11

party's sworn inventory."

Ray argues on appeal that the case is "replete with fact issues." He cites *Herschberg v. Herschberg*, a divorce case in which this Court held that the trial court's error in denying appellant's request for jury trial was harmful because there were "fact issues on (1) the nature and value of the property and (2) tort claim liability." No. 13-96-215-CV, 1997 WL 33760711, at *3 (Tex. App.—Corpus Christi–Edinburg July 10, 1997, no writ) (mem. op.). Ray contends—pointing to the proposed jury charge he filed on the morning of the motion in limine hearing—that the issues suitable for jury determination in this case included: (1) whether either party was at fault in the breakup of the marriage, including whether either party was guilty of cruel treatment; (2) whether Vanessa took money from community bank accounts during the pendency of the case; (3) whether certain properties were Ray's separate property, and whether Vanessa was entitled to reimbursement relating thereto; (4) whether certain real property in New Mexico was Vanessa's separate property, and whether Ray was entitled to reimbursement relating thereto; and (5) the valuation of certain community properties.

We observe that "answers of the jury regarding disposition of property," including reimbursement, are "advisory only," and there is no right to a jury trial when the jury's verdict is merely advisory. *Cockerham v. Cockerham*, 527 S.W.2d 162, 173 (Tex. 1975); *Vallone v. Vallone*, 644 S.W.2d 455, 459 (Tex. 1982); *see Walter v. Walter*, 127 S.W.3d 396, 398 (Tex. App.—Dallas 2004, no pet.). That said,

> [t]hough the trial court has wide discretion in dividing the property of the spouses as it feels just and in disregarding advisory answers of the jury, it may not ignore the jury's answers which extend to issues of fact from which the status of property is determined. This is particularly true when the disposition of the property to the husband or wife is based solely on its status.

12

*Cockerham*, 527 S.W.2d at 173 (citation omitted); *see In re Troy S. Poe Tr.*, 646 S.W.3d 771, 783 (Tex. 2022) (Busby, J., concurring) (noting that "the right to a jury trial extends to disputed issues of fact in equitable . . . proceedings" even though "it is the trial court's role to determine the expediency, necessity, or propriety of equitable relief" (quotations and citations omitted)); *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 741 (Tex. 2018) ("When contested fact issues must be resolved before equitable relief can be determined, a party is entitled to have that resolution made by a jury."). Accordingly, even though jury findings on the disposition of property are merely advisory, the trial court's denial of Ray's request for jury trial would be harmful if there were disputed fact issues concerning the "status of property" upon which the disposition of property is based. *See id.*

Further, as Vanessa emphasizes, under Texas Rule of Civil Procedure 193.6, a party who fails to make a required disclosure in a timely manner may not introduce in evidence the material that was not timely disclosed, unless the court finds good cause for the failure or that the failure will not result in unfair surprise or unfair prejudice. TEX. R. CIV. P. 193.6(a).

> The salutary purpose of [the predecessor to Rule 193.6] is to require complete responses to discovery so as to promote responsible assessment of settlement and prevent trial by ambush. The rule is mandatory, and its sole sanction—exclusion of evidence—is automatic, unless there is good cause to excuse its imposition. The good cause exception permits a trial court to excuse a failure to comply with discovery in difficult or impossible circumstances. The trial court has discretion to determine whether the offering party has met his burden of showing good cause to admit the testimony; but the trial court has no discretion to admit testimony excluded by the rule without a showing of good cause.

*Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 914 (Tex. 1992) (citations omitted). Vanessa contends that, to the extent there were issues of fact on which a jury could potentially make non-advisory findings, Ray was precluded from introducing evidence or

legal theories on those issues because he failed to disclose them in discovery.

Having considered the record, we disagree that there were no fact issues appropriate for a jury to decide. First, with respect to the parties' opposing claims of cruel treatment, Vanessa correctly notes that Ray forfeited his ability to produce any trial evidence regarding Vanessa's alleged cruel treatment because he did not identify any specific factual basis or legal theory underlying that claim in discovery, and he did not show good cause to avoid the mandatory effect of Rule 193.6. *See* TEX. R. CIV. P. 193.6; *Alvarado*, 830 S.W.2d at 914. However, even if Ray could not produce evidence of Vanessa's cruel treatment, it is undisputed that *Vanessa's claim of cruel treatment by Ray* was properly pleaded and disclosed in discovery, and the trial court found in favor of Vanessa on that claim after trial.[6] Rule 193.6 did not preclude Ray from presenting evidence in defense against this claim. Instead, the general denial of the claim in Ray's answer generated a fact issue for a jury to decide. *See Guerra v. Guerra*, 327 S.W.2d 625, 628 (Tex. App.—San Antonio 1959, no writ) (noting that whether a spouses' "conduct renders further living together insupportable is largely a question of fact" and "[w]hether or not cruel treatment exists depends largely upon the peculiar facts in each case and it is difficult to lay down a general rule that applies to all cases").

Second, there was a dispute about the characterization of certain real property. In particular, the receiver's report contained a section entitled "Disputed Characterization" which listed seven different real properties in Harris and Kleberg Counties which Ray

---

[6] The trial court did not explicitly find either party at fault for the breakup of the marriage. However, it found that only Ray was guilty of "cruel treatment . . . of a nature that renders further living together insupportable" and it noted that it considered "[f]ault grounds" in making the just and right division of property. Therefore, the record reflects that the cruel treatment finding affected the division of property in the decree, and Ray was entitled to a jury trial on that issue. *See Cockerham v. Cockerham*, 527 S.W.2d 162, 173 (Tex. 1975).

alleged were his separate property but which Vanessa alleged were community property. Ultimately, the trial court concluded that six of the tracts were Ray's separate property, but it found that one of them—the one located on East Caesar Avenue in Kingsville—was community property, and it awarded that one property to Vanessa in the final decree. If a jury believed Ray's allegation that the East Caesar Avenue property was his separate property, the trial court would have been forbidden from awarding it to Vanessa. *See Boyd v. Boyd*, 67 S.W.3d 398, 406 (Tex. App.—Fort Worth 2002, no pet.) (noting that a spouse's separate property is not subject to just and right division by trial court); *see also Cameron v. Cameron*, 641 S.W.2d 210, 215 (Tex. 1982) (noting that Texas courts are not "authorized to divest either spouse of his or her title to separate property"); *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 142 (Tex. 1977) ("Trial courts have a broad latitude in the division of the marital community property, but that discretion does not extend to a taking of the fee to the separate property of the one and its donation to the other."). This specific allegation was supported by Ray's timely-filed sworn inventory and generated a fact issue for the jury to decide. *See Cockerham*, 527 S.W.2d at 173.

Third, the parties disagreed about the valuation of various pieces of personal and real property. According to the receiver's report, the community estate included nine pieces of real estate (not including those listed in the "Disputed Characterization" section)—and the parties' sworn inventories differed as to the value of each of them. Overall, Vanessa valued the nine properties collectively at $2,637,000, whereas Ray valued them at $1,443,843. The receiver's report also listed, as to each of the properties, a value which was determined by the receiver himself, which he testified was based on appraisals by a real estate appraiser agreed upon by the parties. The receiver valued the

nine properties collectively at $2,595,000—a figure very close to that proposed by Vanessa—and the trial court adopted the receiver's findings. But crucially, there is nothing in the record indicating that the receiver's or appraiser's valuations were binding on the parties or on the court. The record establishes that the parties agreed to the receiver's use of estate funds to retain one personal property appraiser and one real estate appraiser, but it does not show that the parties agreed to be bound by the appraiser's findings.[7] Indeed, the receiver stated at the November 14, 2022 hearing that "whether the parties choose to contest" the appraiser's valuations is "up to them." Ray contested the valuations by timely filing his sworn inventory, thereby generating fact issues for a jury. *See id.*

The same analysis holds with respect to the community interest in PartsCo, the HVAC supply business which was part of the community estate. The receiver's report indicates that Ray's sworn inventory valued the business's inventory at $75,000, whereas Vanessa valued it at $155,139.18. Further, Vanessa separately valued the "business interests" of PartsCo at $200,000, whereas Ray did not list that in his inventory. The receiver adopted Vanessa's valuation of the inventory but was unable to value any other interest in the company. The trial court awarded the business to Ray; however, if a jury found in favor of Ray on the valuation of the business's inventory, the just and right division of property would have been affected. Ray's timely-filed sworn inventory generated a fact issue as to the valuation of PartsCo. *See id.*

---

[7] The record also does not show that the receiver was required to adopt the appraiser's findings or that the court was required to adopt the receiver's findings. We note that, under the family code, a receiver may be appointed in a divorce case "for the preservation and protection of the property of the parties," but is not explicitly empowered to determine the valuation of property. *See* TEX. FAM. CODE ANN. § 6.709(a)(3).

At the November 14, 2022 hearing, Vanessa's counsel asserted that, even if there was a fact issue regarding the valuation of certain properties, Ray would be precluded from testifying as to the valuation under the "Property Owner Rule" because he did not identify himself as an expert witness in response to discovery requests. *See Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 155 (Tex. 2012) ("A property owner may testify to the value of his property."). But "[t]he Property Owner Rule falls under Texas Rule of Evidence 701, which allows a *lay witness* to provide opinion testimony if it is (a) rationally based on the witness's perception and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." *Id.* at 157 (emphasis added) (first citing TEX. R. EVID. 701; and then citing *Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 852 (Tex. 2011)); *Subsea 7 Port Isabel, LLC v. Port Isabel Logistical Offshore Terminal, Inc.*, 593 S.W.3d 859, 874 (Tex. App.— Corpus Christi–Edinburg 2019, pet. denied). "Based on the presumption that an owner is familiar with his property and its value, the Property Owner Rule is an exception to the requirement that a witness must otherwise establish his qualifications to express an opinion on land values." *Justiss*, 397 S.W.3d at 157. Under the Property Owner Rule, an owner's valuation testimony "fulfills the same role that expert testimony does," though that testimony is "based on personal knowledge rather than merely on expertise." *Id.* at 157 & n.7. Accordingly, while valuation testimony "may not be based solely on a property owner's *ipse dixit*," the Property Owner Rule establishes that an owner is automatically qualified to provide such testimony and need not be disclosed as an expert witness. *See id.* at 156, 159; *see also* TEX. R. CIV. P. 193.6(a) (providing that a "named party" need not be identified in discovery in order to testify at trial).

17

Applying "close[] scrutin[y]" to the trial court's decision, *see City of Garland*, 969 S.W.2d at 558, we conclude it was an abuse of discretion to deny Ray's request for a jury trial in this case.[8] Moreover, the error is reversible because there were issues of fact suitable for determination by a jury. *See In re J.N.*, 670 S.W.3d at 621; *see also* TEX. R. APP. P. 44.1. Ray's first issue is sustained.[9]

### III.     CONCLUSION

We affirm the trial court's judgment insofar as it grants a divorce between the parties. The remainder of the judgment is reversed, and we remand for a jury trial consistent with this memorandum opinion. All pending motions are denied as moot.

YSMAEL D. FONSECA
Justice

Delivered and filed on the
20th day of February, 2025.

---

[8] The list of outstanding jury issues set forth in this memorandum opinion is not exclusive. The trial court shall determine on remand, consistent with this memorandum opinion, which additional issues are appropriate for jury resolution, if any.

[9] In light of our conclusion, we need not address Ray's other issues. *See* TEX. R. APP. P. 47.1.